UNITED STATES of America, Appellee,

v.

Glennon E. ENGLEMAN, Appellant.

UNITED STATES of America, Appellee,

v.

Robert HANDY, Appellant.

UNITED STATES of America, Appellee,

v.

Glennon E. ENGLEMAN, Appellant.

Nos. 80–1906, 80–1962 and 80–1961.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 11, 1981.

Decided May 6, 1981.

Rehearing and Rehearing En Banc Denied
in Nos. 80–1906 and 80–1961
June 3, 1981.

▇

---

Frederick R. Buckles, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Shifrin, Treiman, Barken, Dempsey & Ulrich, Richard R. Vouga (argued), Richard B. Dempsey, Law Offices of J. Martin Hadican by J. Martin Hadican (argued), and Joyce Yulkey MacDonald, St. Louis, Mo., for appellant.

Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.

STEPHENSON, Circuit Judge.

## I. PREFACE

This is a consolidated appeal of two separate cases. In the first case, Glennon Engleman (80–1906) and Robert Handy (80–1962) appeal their joint jury convictions[1] on fifteen counts of mail fraud and one count of conspiracy to commit mail fraud in connection with the death of Peter J. Halm, Jr. Basically the charges arise out of an alleged scheme to defraud insurance companies by insuring the life of Peter Halm, Jr. and then killing him on September 5, 1976.[2]

Engleman appeals on the grounds that it was error for the district court: (1) to allow extensive testimony concerning Engleman's complicity in the death of one Eric Frey in 1963, and sharing in the insurance proceeds; (2) to allow tape recordings of Engleman's conversations made without his consent to be played for the jury; and (3) to refuse to provide the jury with written instructions during their deliberations.

Handy appeals on the grounds that it was error for the district court: (1) to refuse to sever his trial from that of his co-defendant Engleman; (2) to allow evidence of Engleman's involvement in another crime, the Eric Frey murder in 1963, to be admitted into evidence; (3) to deny his motion for judgment of acquittal; (4) to allow co-defendant Engleman's statements after the conspiracy had ended to be admitted against Handy; (5) to allow certain hearsay

to be received into evidence; (6) to refuse to give certain limiting instructions; and (7) to refuse to submit copies of the instructions to the jury for use during its deliberations.

In the second case before us, Engleman appeals his jury conviction (80–1961) in a later separate trial of violating 18 U.S.C. § 844(i) through the destruction, by means of an explosive, of a vehicle used in an activity affecting interstate commerce and which resulted in the death of Sophie Marie Barrera. Engleman was sentenced to thirty years imprisonment on this charge to run consecutively to the thirty year sentence imposed in the fraud trial (80–1906). Engleman appeals on the grounds that it was error for the district court to allow extensive testimony concerning Engleman's alleged participation in a previous bomb incident involving Barrera and for the district court to allow tape recordings of Engleman's conversations made without his consent to be played for the jury.

We affirm the convictions of Engleman in both cases (80–1906, 80–1961). We reverse and remand for a new trial the conviction of Handy (80–1962).

## II. PETER HALM DEATH—SCHEME TO DEFRAUD (80–1906, 80–1962)

Glennon Engleman and Robert Handy appeal their convictions for mail fraud and conspiracy to defraud which stem from the death of Peter J. Halm and their scheme and conspiracy to collect insurance proceeds resulting from his death. According to testimony submitted at trial, one Carmen Miranda Halm, then Carmen Miranda, worked for Engleman as a dental assistant trainee in his dentistry practice. Miranda, who was much younger than Engleman, had known Engleman much of her life. She apparently respected Engleman and relied on his judgment. Miranda consulted with Engleman about some financial difficulties and,

---

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri, presiding.

2. Engleman was sentenced to an aggregate term of thirty years imprisonment on the conspiracy and fraud counts. Handy received a twenty year term of imprisonment.

according to Miranda, Engleman suggested that she marry someone, take out a life insurance policy on him, and Engleman would kill him. Engleman and Miranda would then split the insurance proceeds. Engleman said he knew the scheme would work because he had done it before when, in 1963, he killed Eric Frey, a business associate, and divided the insurance proceeds with Frey's widow.

Miranda eventually agreed to the scheme. Engleman counseled her on the criteria she should use in selecting a victim and they eventually agreed on Halm. Miranda changed jobs at Engleman's suggestion; however, Engleman continued to instruct her on how to proceed.

On October 31, 1975, Miranda and Halm were married. After the wedding, Miranda stayed in touch with Engleman. He advised her on how to obtain insurance on her husband, to have property placed in her name, and to have her name placed as beneficiary on existing insurance policies.

Some months later, Engleman and Miranda planned Halm's death. Engleman and Miranda scouted a number of locations. Miranda lured Halm to selected locations on two occasions, but the planned shootings were aborted because of problems with the plan. Co-defendant Handy was present on one occasion.

A site near Pacific, Missouri, was selected for the third attempt. The plan was practiced at the scene with Engleman giving instructions as to how the plan should be carried out. On September 5, 1976, Miranda lured Halm to the location. As she stood next to Halm, Engleman shot him with a rifle that had been previously purchased by co-defendant Handy. Miranda screamed and ran. Engleman tried to calm her, but someone called out, and Engleman disappeared.

Others arrived at the scene and an ambulance was called. However, Halm was dead on arrival at St. Francis Hospital in Washington, Missouri. After an autopsy, it was determined that Halm had died of a gunshot wound in the back.

After Halm's death, Miranda collected approximately $75,000 in insurance proceeds. In March 1977, Nicholas Miranda, Carmen Miranda's brother, paid Engleman $10,000 in cash as payment for his part in the scheme. Shortly thereafter, Engleman met with co-defendant Handy who suggested the money should be broken down into smaller denominations to avoid the money being traced. Ruth Engleman, Engleman's former wife, testified to this transaction.

On January 16, 1980, Ruth Engleman contacted federal law enforcement authorities and gave them information about her husband's past activities. At the request of the Bureau of Alcohol, Tobacco and Firearms, on February 14, 1980, she wore devices to allow certain conversations between her and her former husband to be monitored and recorded. During these taped conversations, Engleman acknowledged his involvement with Carmen Miranda in a scheme to obtain money and that he had received $10,000 from her brother Nicholas Miranda. During the trial of Engleman and Handy on the mail fraud and conspiracy charges, an edited version of the tapes was played.

The prosecution, over objection, also submitted the testimony of John Newton Carter concerning the death of Eric Frey on September 23, 1963. Carter was a partner of Engleman's in Pacific Drag Strip. Carter testified that on the day of Frey's death, Eric Frey, Sondra Frey, Nicholas Miranda, Engleman, and Carter were working at the drag strip. They were blowing up a well. Carter and Engleman both set off half sticks of dynamite in the well.

Carter testified that shortly thereafter Frey was killed and that Engleman admitted killing Frey for the insurance proceeds. The government also produced as witnesses representatives of two insurance companies who testified that Frey's widow had collected on insurance policies after his death. Handy asked the court, prior to receiving the testimony of Carter and the insurance company representatives, to again admonish the jury that this did not relate to Handy. The court denied this request, not-

ing that the jury had been so admonished once and he would repeat the instruction at the close of the case.

It should also be noted that, as stated previously, Carmen Miranda testified that Engleman had told her that he had killed Eric Frey, a business associate, and divided the insurance proceeds with Frey's widow.

In connection with Handy's participation in the scheme to defraud, the prosecution submitted, along with other evidence, the testimony of Carmen Miranda that Engleman had told her two months after Halm's death that he had to pay Handy. Also submitted was the statement of Nicholas Miranda that Engleman had said that during one of the attempts on Halm's life he and Handy had to quickly run away when a dog barked at them. Handy, who was present, agreed and said, "yes, we did." In addition, the government submitted Engleman's recorded statement to his former wife that he had given the $100 bills received from Miranda to Handy and his wife. The government also presented evidence that Handy had purchased the rifle used by Engleman in killing Halm.

### A. Engleman and the Halm Death— Scheme to Defraud—Alleged Errors

#### 1. Testimony Concerning the Eric Frey Death in 1963

■■■ Engleman contends that the testimony suggesting that he was involved in the death of Eric Frey was inadmissible under Fed.R.Evid. 404(b). Rule 404(b) states:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rules for admission of other crimes evidence are well established: (1) the evidence of other crimes must be admissible on a *material issue* raised; (2) the evidence must be *similar* in kind and *reasonably close in time* to the charge at trial; (3) the evidence of the other crime must be clear and convincing; and (4) the probative value of the evidence must not be outweighed by its prejudice. *United States v. Frederickson*, 601 F.2d 1358, 1365 (8th Cir.), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

In reviewing the admissibility of evidence, this court applies an abuse of discretion standard. *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir. 1980); *United States v. Moss*, 544 F.2d 954, 960–61 (8th Cir. 1976), *cert. denied*, 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977); *Control Data Corp. v. International Business Machines Corp.*, 421 F.2d 323, 326 (8th Cir. 1970); *Burger Chef Systems, Inc. v. Govro*, 407 F.2d 921, 930 (8th Cir. 1969).

Engleman argues that the evidence of Eric Frey's death and the collection of insurance proceeds dealt with no material issue in Engleman's trial which involved the death of Peter Halm and the scheme to collect insurance proceeds. Engleman argues that the issue of intent was not raised in the instant case because he denied the acts charged. *See United States v. Fierson*, 419 F.2d 1020, 1022–23 (7th Cir. 1969).

The prosecution replies to this argument that when specific intent is an element of an offense, proof of similar acts may be admitted to carry that burden even if the defense to the charge is a complete denial. *United States v. Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); *United States v. Conley*, 523 F.2d 650, 654 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976).

■■■ Because the evidence was relevant to proving intent, we conclude the district court did not abuse its discretion in allowing the evidence to be admitted. *United States v. Adcock, supra*, 558 F.2d at 402 and *United States v. Conley, supra*, 523 F.2d at 654, do not require the defendant to have raised the issue of intent for it to be an issue in the case where, as in this case, the

crime for which the defendant is charged requires proof of specific intent.[3]

■ Engleman also argues that in order for evidence of similar crimes to be admitted, there must be an actual need for such evidence in light of the issues and the other evidence available to the prosecution. *See United States v. Byrd*, 352 F.2d 570, 575 (2d Cir. 1965). Appellant claims that if the government has a sufficient case to survive a motion for directed verdict of acquittal and has "other" probative evidence, evidence of similar crimes should not be admitted. Appellant concludes that in view of the fact that this case survived the motion for directed verdict and in light of the testimony of Carmen Miranda, Nicholas Miranda, and Ruth Engleman about Engleman's involvement in Halm's death, there was no need for the evidence.

We disagree. The evidence concerning intent and motive was not so great as to make the evidence of similar crimes cumulative. In the principal case relied on by Engleman, *United States v. Byrd, supra*, 352 F.2d at 574–75, four co-defendants testified against Byrd concerning his taking bribes while he worked for the IRS. *Byrd* is a far stronger case than the instant case. We find no abuse of discretion in the district court's admission of this evidence.

■ Appellant further argues that the evidence of Frey's murder was not probative on a material issue similar in kind and reasonably close in time to the issue at trial. It is our view that because the crimes are nearly identical, the only issue that requires discussion is whether the events were too remote in time. It is true there was approximately a thirteen year gap between the offenses. However, there is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case. *See, e. g., United States v. Frederickson, supra*, 601 F.2d at 1365; *United States v. Drury*, 582 F.2d 1181, 1184 (8th Cir.

1978); *United States v. Jardan*, 552 F.2d 216, 219 (8th Cir.), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977). Upon reviewing the similarities of the events and the length of time each crime required in planning and execution, we cannot say the district court abused its discretion in concluding thirteen years was not an unreasonable time.

■ Engleman's next argument is that the proof of Engleman's involvement was not clear and convincing, as it must be for the evidence to be admissible. *United States v. Frederickson, supra*, 601 F.2d at 1365. Engleman claims that only the testimony of Carmen Miranda, who was not present at Frey's death, and John Carter, who had lied in his previous deposition about the number of explosions he heard, linked Engleman with the crime. Engleman contends this evidence is not "clear and convincing."

We hold the district court did not err in its finding that the evidence was clear and convincing. The evidence consisted of testimony concerning admissions by Engleman which were corroborated by other evidence and in light of the consistency and nature of this evidence we cannot say that the district court abused its discretion in the admission of the evidence.

Engleman's final argument against the admissibility of the evidence is that its prejudice outweighed its probative value. Engleman argues that the probative value of the evidence was low because it was remote in time and dissimilar to the charge at trial and because the government did not need the evidence. In addition, the prejudicial impact of the evidence was great.

In examining the facts of the earlier crime, we note that it bore on a material issue, was not too remote in time, was reasonably similar, and the evidence of the crime was clear and convincing. When comparing these factors against possible prejudice, we conclude that the district

---

**3.** We also note that there is strong reason to hold intent was placed in issue in light of defendant's theory that the killing was committed by Carmen Miranda Halm out of passion. This was placed in issue by defendant Engleman's cross-examination of Carmen.

court did not abuse its discretion in determining that the prejudicial impact of the challenged evidence did not substantially outweigh its probative value. *See United States v. Two Eagle*, 633 F.2d 93, 97 (8th Cir. 1980); *United States v. Calvert*, 523 F.2d 895, 907–08 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

### 2. Admissibility of Tape Recording

■ Engleman contends that it was error for the district court to allow into evidence tapes of conversations between him and his wife. Engleman argues that even though his wife consented to having the conversations taped, he did not and the monitoring and taping was therefore an unlawful search and seizure within the Fourth Amendment. Engleman claims that a plurality of the Supreme Court in *Katz v. United States*, 389 U.S. 347, 354–55, 88 S.Ct. 507, 512–513, 19 L.Ed.2d 576 (1967), supports his position.

We do not find Engleman's position persuasive. In *United States v. White*, 401 U.S. 745, 746–54, 91 S.Ct. 1122, 1123–1127, 28 L.Ed.2d 453 (1971), the Supreme Court squarely faced this issue and held such recordings were admissible. Furthermore, in *United States v. McMillan*, 508 F.2d 101 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975), we held:

> It is now well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are electronically monitored by a government agent with the consent of the informant.

*Id.* at 104.[4] We hold the district court did not abuse its discretion in admitting this evidence.

### 3. Written Instructions to the Jury

■ Engleman's third ground for relief is that the district court did not provide written copies of the instructions to the jury upon the request of the defense counsel. Engleman recognizes that this is a matter committed to the sound discretion of the trial judge, but argues that there was error because other circuits have said it is desirable to give written instructions. He contends, because of the numerous, lengthy and complex instructions, written copies of the instructions were necessary to aid the jury.

We find Engleman's arguments unpersuasive. The rule in this circuit is well established that whether written instructions for the jury are necessary is a matter left to the discretion of the trial judge. *United States v. Hill*, 589 F.2d 1344, 1352 (8th Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); *United States v. Conley*, 503 F.2d 520, 522 (8th Cir. 1974). We do not find that the length or complexity of this trial provides sufficient grounds for us to reverse the district court.

### B. Handy and the Halm Death—Scheme to Defraud—Alleged Errors

### 1. Severance of the Handy and Engleman Trials

Robert Handy advances several errors in his trial which he claims justifies acquittal or a new trial. Handy's first ground for relief is that it was an abuse of discretion for the district court to refuse to sever his trial from Engleman's. Handy, prior to and on several occasions during the trial, requested the court for severance because he was denied the right to a fair trial. He contends that the evidence received concerning Engleman's conduct, which did not involve Handy, was highly prejudicial.

■ The general rule is that persons charged in a conspiracy are tried together. However, where a defendant demonstrates that a joint trial will prejudice his right to a fair trial, the court must sever the trials.[5]

---

4. *See also Durns v. United States*, 562 F.2d 542, 547–48 (8th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977); *United States v. Jones*, 545 F.2d 1112, 1114 (8th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); *United States v. Quinn*, 543 F.2d 640, 648–49 (8th Cir. 1976).

5. *See Schaffer v. United States*, 362 U.S. 511, 514–16, 80 S.Ct. 945, 947–948, 4 L.Ed.2d 921 (1960), wherein the Supreme Court recognized the continuing duty of the court to grant a severance when prejudice becomes apparent.

*United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). The rule laid down in *Jackson* is as follows:

It is the general rule that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts. * * * Severance will be allowed upon a showing of real prejudice to an individual defendant. * * * However, the motion to sever is addressed to the discretion of the trial court, * * * and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. * * * A defendant must show something more than the mere fact that his chances for acquittal would have been better had he been tried separately. * * He must "affirmatively demonstrate that the joint trial prejudiced [his] right to a fair trial." * * * Thus, before the refusal to sever may be deemed an abuse of discretion on the part of the trial court, prejudice to a defendant's right to a fair trial must be established. Relying upon these principles, we now turn to defendant's numerous severance claims.

*Id.* at 523–24 (citations omitted).

We conclude that the district court abused its discretion in not severing Handy's trial from that of Engleman. Of crucial importance is the evidence pertaining to Engleman's involvement in Frey's death in 1963, and the collection of insurance proceeds. For example, witness Carter testified that he was nearby when Frey was killed by an explosion. A few minutes thereafter Engleman stated to Carter, "I killed him * * * for the insurance." Handy was in no way involved in this scheme.

Prior to Carter's testimony, Handy renewed his motion for a severance and requested that in the event it was overruled, that the court give the same cautionary instructions that the court previously gave when Carmen Miranda Halm testified five days earlier regarding the same subject. The court denied both motions stating that the jury would be fully instructed at the close of the evidence.

It is our view that in this case the evidence concerning Frey's murder and insurance fraud surrounding it was so prejudicial that a new trial must be ordered as to defendant Handy. Failure to renew the cautionary instruction in connection with Carter's testimony in this lengthy trial only compounded the prejudice.

## 2. Denial of Motion for Acquittal

Handy argues that it was error for the district court to deny his motion for a judgment of acquittal based on the argument that the evidence was not sufficient as a matter of law to establish that Handy knowingly participated in the alleged conspiracy and scheme to defraud. Handy contends that there was no direct evidence linking him to the crime. Also, he argues that the circumstantial evidence in the case was as consistent with his innocence as with his guilt.

The evidence offered against Handy included testimony that Ken Copes saw Handy purchase the gun used to kill Halm, that Engleman told his wife during a discussion of Halm's death that he needed money to pay Handy, and that Handy affirmed Engleman's statement to Nicholas Miranda that Handy and Engleman had to run when a dog discovered them during an earlier attempt to shoot Halm. Additional evidence included testimony by Mrs. Engleman that in March 1977, Handy helped Engleman change $10,000 in $100 bills into smaller denominations. The $10,000 was Engleman's share of the insurance proceeds collected after Halm's death and delivered to Engleman by Nicholas Miranda in behalf of Carmen Miranda Halm.

We must view the evidence in the light most favorable to the verdict, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and we must accept as established all reasonable inferences that tend to support the verdict.

*United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). In light of all the evidence, especially that indicating Handy bought the stolen gun which later was used to kill Halm, and the evidence apparently linking Handy with the financial aspects of the death, we cannot say that as a matter of law there was not a submissible case.

■ In view of our remand for new trial, we note that Handy argues that it was error for the district court to admit certain statements by Engleman concerning Handy into evidence under Fed.R.Evid. 801(d)(2)(E). Rule 801(d)(2)(E) allows evidence to be admitted if the statement is made "by a co-conspirator of a party during the course and in furtherance of the conspiracy." *See United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978). Handy contends that certain testimony was not "in furtherance of the conspiracy." We particularly note the contested statement made on February 14, 1980, during the tape recorded conversation between Engleman and his former wife. During the conversation, Engleman recounted that he had given the money brought by Nicholas Miranda to his wife and Handy. Handy contends this statement was not made in the furtherance of the conspiracy because the conspiracy had ended in 1977, when the insurance had been collected and Engleman had been paid. We agree this statement was inadmissible under Rule 801(d)(2)(E) because it was made long after the object of the conspiracy had been achieved. Although cumulative, the trial court abused its discretion in admitting such testimony. It should not be admitted on re-trial.

### III. ENGLEMAN AND THE BARRERA DEATH (80–1961)

Sophie Marie Barrera owned and operated Barrera Labs, Inc. in St. Louis, Missouri. In March 1978, Engleman owed the lab $14,504.37 and, as a result, the lab refused to perform work for Engleman. Barrera filed suit for the amount and on March 9, 1979, she received a default inquiry. On March 19, Engleman filed a motion to set aside the default. On March 20, a partially detonated bomb was found in the rear garage area of 4241 Hartford in St. Louis, Missouri, where Barrera kept a 1975 Pinto delivery vehicle used in connection with her business. The bomb was composed of dynamite which had become wet, thereby causing only a minor explosion.

Engleman was apparently upset about the suit. On March 21, 1979, when speaking to his former wife, he admitted that he was responsible for the attempted bombing of Barrera's property on March 20, 1979.

On March 21, 1979, Barrera contacted her attorney and told him that she preferred to accept any settlement rather than pursue the default judgment. No steps were taken to secure the default judgment. Eventually the case was scheduled for trial for the week of January 21, 1980. However, on January 14, Barrera died when a bomb exploded in her Pinto delivery vehicle. The following evening, while visiting his former wife, Engleman told her that a TV news story to the effect that three men dressed in orange uniforms were around the vehicle prior to the bombing was correct.

An analysis of the bomb scene revealed that a water gel explosive or dynamite had been used. Pieces of a pressure switch, similar to those found at the scene of the earlier bombing on March 20, 1979, were found.

In January and February 1980, Engleman's former wife had several conversations with her former husband which were taped. Edited versions of the tapes were received in evidence and played for the jury. Defendant Engleman admitted making the statements on the tapes. The tapes reveal that Engleman acknowledged a financial gain from Sophie Barrera's death and stated that she deserved killing. He also admitted his expertise with explosives.

■ The first contention Engleman advances in this appeal is that the district court erred when it admitted evidence concerning Engleman's alleged involvement in a bombing incident involving Barrera's resi-

dence approximately ten months prior to the later bombing which is the subject of this prosecution. As discussed earlier,' this court in *United States v. Frederickson, supra*, 601 F.2d at 1365, restated the test for determining whether evidence of a prior criminal act is admissible in a subsequent criminal case.

We conclude that the district court did not abuse its discretion in admitting the disputed evidence. The prior bombing was probative of Engleman's motive and intent because the events tended to correspond with the progression of Barrera's lawsuit against Engleman and to demonstrate a motive for the bombing. The prior bombing also tended to show the identity of the person behind the bombings because of the similarities in the bomb and the detonation switch. *See United States v. Two Eagle, supra*, 633 F.2d at 96–97. In addition, the prior bombing helped to establish a common plan, which provides an alternative basis for establishing the material issue upon which this evidence was admissible.

In light of the fact that the previous bombing was only ten months prior to the fatal bombing, that it involved the same victim, and that the explosions were of a similar character, we conclude the prior act satisfies the second element of the *Frederickson* test by being similar in kind and reasonably close in time to the later act. The circumstances of the prior bombing certainly make the evidence of that crime clear and convincing, thereby satisfying the third element. Further, the fourth part of the test is satisfied because the highly probative value of the evidence in establishing motive, intent, plan, and identity outweigh any unfair prejudicial impact the evidence might create. We therefore hold the district court did not abuse its discretion in allowing evidence to be admitted in connection with the previous bombing.

The second ground urged by Engleman for reversal is that the tape recordings of conversations between him and his former wife, and to which she had consented, violated his Fourth Amendment rights against unlawful search and seizure because he did not consent. As we have previously held in this opinion, the consent of both parties is not necessary.[6] Only one party needs to have consented. *See United States v. White, supra*, 401 U.S. at 746–54, 91 S.Ct. at 1123–1127; *Durns v. United States*, 562 F.2d 542, 547–48 (8th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977); *United States v. Jones*, 545 F.2d 1112, 1114 (8th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); *United States v. Quinn*, 543 F.2d 640, 648–49 (8th Cir. 1976); *United States v. McMillan, supra*, 508 F.2d at 104. We conclude the district court did not abuse its discretion in admitting the tape recordings into evidence.

## IV. CONCLUSION

In summary, we affirm the convictions of Engleman on the conspiracy and mail fraud counts involving Halm's death (80–1906) and the bombing charge count concerning Barrera's death (80–1961). For the reasons previously stated, we reverse the conviction of Handy (80–1962) and remand for new trial.

---

6. *See* text accompanying note 4 *supra*.