**UNITED STATES of America, Appellee,**

v.

**Larry E. FOLEY, Appellant.**

**No. 81–2419.**

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1982.

Decided July 26, 1982.

Rehearing Denied Aug. 26, 1982.

Victor Hlavinka, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Tex., for appellant.

W. Asa Hutchinson, U. S. Atty., Steven N. Snyder, Asst. U. S. Atty., Fort Smith, Ark., for appellee.

Before BRIGHT, Circuit Judge, and GIBSON and STEPHENSON, Senior Circuit Judges.

STEPHENSON, Senior Circuit Judge.

Larry E. Foley appeals his jury conviction [1] of wire fraud in violation of 18 U.S.C. § 1343. Foley was convicted of obtaining $17,500 from George Castleberry of Tulsa, Oklahoma, in a scheme to defraud and transmitting a telephone communication on June 14, 1979, in execution of the scheme. Foley claims the trial court committed various errors in admitting evidence of prior convictions, commenting on the evidence, finding the government adduced sufficient evidence of guilt, and ruling that the government proved a transmission by means of wire, radio, or television communication as required by 18 U.S.C. § 1343. We affirm the district court.

FACTS

George Castleberry met Larry Foley in March 1978. Foley was then president of the National Baseball Congress (NBC). The NBC is a national organization which promotes semi-professional baseball. The NBC is approximately fifty years old and, through regional franchises across the country, it conducts regular season and tournament games.

Castleberry had been affiliated with the Arkansas franchise of the NBC in various capacities, for over thirty years. As a re-

---

1. The Honorable Paul X Williams, Senior United States District Judge for the Western District of Arkansas, presiding.

sult of his involvement with the NBC, Castleberry and Foley met on January 24, 1979, to discuss the possibility of establishing another sports organization, the National Sports Association (NSA). The plans called for the NSA to operate in much the same fashion as the NBC, except that it would sponsor racquetball, basketball and football as well as baseball. As a result of the meeting, Castleberry purchased stock for $2,000 and a franchise for $2,500. Castleberry's son also purchased $2,000 in stock. Operation of the NSA was planned to commence in the summer of 1979. However, no events were held.

On June 14, 1979, Foley called Castleberry and requested a meeting for the purpose of discussing the purchase of the NBC.[2] On June 17, Foley and Castleberry met to discuss the NBC purchase. Castleberry testified at trial that Foley told Castleberry the purchase price was $135,000 and that he needed $17,500 from Castleberry to complete the financing to exercise the option. Castleberry also testified that Foley said the option would be exercised before October 1 in order to obtain the proceeds from the August tournaments.

On June 18, Foley accompanied Castleberry to the bank where Castleberry borrowed the money to pay Foley. In exchange for $17,500, Castleberry received a promissory note with a mortgage from the NSA and Foley for $8,750 secured by the assets of the NBC. He also received as collateral a real estate lot encumbered by a prior mortgage held by Mid-Kansas Federal Savings & Loan Association.[3] Castleberry also received 8750 shares of stock in the NSA from Foley.

Castleberry testified at trial that, as a result of the purchase, he was to receive $8,750 within 180 days in proceeds from the NBC baseball tournaments and NBC stock in exchange for his NSA stock.

Castleberry heard nothing from Foley. So, sometime prior to September 7, 1979, he attempted to call Foley. He was unable to reach Foley but he did contact his daughter. Foley's daughter told Castleberry that Foley had been hospitalized and that only family members could talk to him. She did not disclose where he was hospitalized. She advised Castleberry to write a letter to Foley through the family.

Castleberry wrote Foley on September 7, inquiring into the status of the NBC option. He asked Foley to inform him regarding the progress of the transaction. In a letter dated September 25 and postmarked October 5, Foley informed Castleberry that he was hospitalized in intensive care as a result of black-outs. He stated that he would be hospitalized for two months and would then be placed in a Wichita, Kansas hospital. Foley did not disclose where he was hospitalized nor that he was incarcerated in the federal institution at Springfield, Missouri. He said the NBC owner had been asked to extend the option until Foley was released from the hospital. He added that if the NBC did not extend the option, he would proceed with the establishment of the NSA.

Eventually, Castleberry discovered that Foley had not exercised the option and that he had used the $17,500 for his personal use.[4] In December 1979, Castleberry served Foley with notice of a civil suit based on the NSA and NBC transactions.

On direct examination, Foley testified that in February or March 1979, he was indicted in Tulsa, Oklahoma, for submitting a fraudulent profit and loss statement to a bank to obtain credit for a bankrupt chain of cheese stores which he owned.

On June 11, 1979, Foley pleaded guilty to the bank fraud charge. He claimed that he

---

2. The government introduced telephone call records into evidence showing a nine-minute call was made from Mermack, Oklahoma to Nashville, Arkansas. The call was billed to the National Sports Association of which the telephone company's credit records indicated Larry Foley was the president. Foley admitted that he called Castleberry on that date.

3. Castleberry subsequently learned that there were additional encumbrances against the property which combined exceeded the appraised value of the lot.

4. Foley admitted that none of the money was used to purchase the NBC.

was assured by his attorney that he would be given probation. Foley testified at trial that he believed that he would not be incarcerated even though the judge told him at the time he entered the guilty plea that he could be sentenced to two years in prison and fined up to $5,000.

On July 16, Foley was sentenced to five months incarceration on the bank fraud charge. He was immediately sent to the federal prison hospital in Springfield, Missouri, where he remained for over four months.

Foley testified that he was assured by his attorneys, even after he was sentenced, that he would be released "by the middle of September." Foley was not released and his attempts to extend the time period of the NBC option failed.

ISSUES

Foley raises six issues on appeal. He argues that the district court erred (1) in not granting a mistrial based on the government's introduction of evidence of a prior conviction other than for the purpose of discrediting Foley's credibility; (2) in admitting a thirteen year old conviction because it was too remote in time and its prejudicial effect outweighed its probative value; (3) in allowing the jury to consider evidence of prior offenses in determining whether Foley had the requisite intent; (4) in submitting paragraph thirteen of the jury instruction because it was an impermissible comment on the evidence; (5) in refusing to grant Foley's motion for acquittal because the government did not adduce sufficient evidence of requisite intent; and (6) in denying Foley's motion for acquittal because the government failed to prove any transmission by means of wire, radio or telephone as required by 18 U.S.C. § 1343.

DISCUSSION

A. Prior Convictions

Because of the similarity of the issues, we combine our discussion of the first three issues involving the admission of Foley's prior convictions.

First, Foley contends that it was error for the district court to admit evidence of the 1979 felony conviction for bank fraud. Pursuant to this conviction, Foley was incarcerated and hospitalized. Foley did not disclose the charge against him to Castleberry, the location of hospitalization, or the fact that he was in prison. Foley argues that the government should not have asked questions concerning the prior conviction on the re-direct examination of Castleberry because Foley had not yet testified.

On cross-examination, Foley's counsel asked Castleberry the following questions:

Q. Now I guess you've learned since all this happened that uh, Mr. Foley ended up going to the penitentiary that summer.

A. I've learned it since it all happened, yes.

Q. And I guess you know too, don't you sir, that he was in the penitentiary to some date just after or just beyond October 1, 1979.

A. Uh, at that particular time I did not know it, I could not find out, it was the uh, the term hospital was used, and

Q. But I'm saying, you've learned since that time—

A. Yes.

On re-direct, the following exchange occurred between the government's attorney and Castleberry.

Q. * * * Did Larry Foley at any time ever tell you that he was in the penitentiary?

A. No or that he had any [convictions] whatsoever.

Q. Well that's what my next question is. Did Larry Foley ever tell you he'd been convicted of a crime?

A. No.

Foley argues that his credibility could not have been at issue because he had not yet testified and, therefore, the testimony concerning the prior conviction was inadmissible.

We note that Foley was the first to elicit testimony regarding his prior conviction.

We reject Foley's contention that the government's questioning on re-direct was improper. The scope of re-direct examination is within the sound discretion of the trial court. *United States v. Taylor*, 599 F.2d 832, 838–39 (8th Cir. 1979). We find no abuse of discretion in this case.

Foley claims that the government's evidence was inadmissible because it was not probative of Foley's credibility. His conclusion is based on the assumption that Foley's credibility could only have been an issue after Foley testified.

Foley's contention is totally without merit. By Foley's inquiry into the subject of his prior conviction during the cross-examination of Castleberry, he opened this subject as a legitimate area of inquiry. There was no prejudice created by the government's questioning and Foley waived any objections he may have had to the admission of that testimony. The district court, during the course of its instructions, also properly cautioned the jury to use the prior convictions only as probative of intent to commit the crime or to impeach the witness's credibility.

 The second issue concerning prior convictions involved the admissibility of appellant's 1968 conviction for mail fraud conspiracy resulting in his incarceration in 1969. Foley was released from this conviction ten years and ten months before the present offense.

Foley argues that the prior conviction was unduly prejudicial because of the length of time that had passed between the offenses; the offense was not "reasonably necessary" to the government's case and it was not made "plain, clear and conclusive" what the conviction involved.

The evidence of the prior crime was admitted for impeachment purposes pursuant to Fed.R.Evid. 609. The rule provides:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Fed.R.Evid. 609(a) & (b).

The prior offense admitted in this case was a derivative of mail fraud, an offense traditionally considered to be one involving "dishonesty or false statement." *United States v. Toney*, 615 F.2d 277 (5th Cir.), *cert. denied*, 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980); *United States v. Phillips*, 488 F.Supp. 508 (W.D.Mo.1980); Cong. Rep.No.93–1597, 93 Cong. 2d Sess. 9, *reprinted in* [1974] U.S.Cong. & Adm.News, pp. 7098, 7103; Note, *Impeachment by Prior Criminal Conviction—Federal Rule of Evidence 609*, 27 Drake L.Rev. 326, 348 (1977). *See United States v. Hastings*, 577 F.2d 38, 41 (8th Cir. 1978).

The offense occurred outside the ten year limit set by Rule 609(b),[5] so it is necessary

---

5. For purposes of this section in computing the amount of time that has elapsed between offenses, Rule 609(b) states that the time period must be computed from the conviction or "re-

to weigh the prejudicial impact against the probative value of the evidence to determine its admissibility.

The weighing of probative value against prejudicial effect is committed to the sound discretion of the trial court. *United States v. Burkhead*, 646 F.2d 1283, 1285 (8th Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981); *United States v. Hall*, 588 F.2d 613, 615 (8th Cir. 1978); *United States v. Phillips, supra*, 488 F.Supp. at 512–14. We are satisfied the district court did not abuse its discretion in admitting the 1968 conviction for impeachment purposes.

■ The third issue raised in reference to prior offenses is Foley's challenge to a jury instruction allowing jurors to consider evidence of prior offenses in determining intent.[6] Foley contends that the 1968 mail fraud conspiracy and 1979 bank fraud offenses were not "reasonably close in time" to the offense which is the subject of the appeal to allow the earlier offenses to be admitted and their prejudicial effect outweighed their probative value. The government argues that the evidence was relevant on a material issue; it was similar in kind and reasonably close in time to the charge on trial; the evidence of the other

crimes was clear and convincing; and the probative value of the evidence substantially outweighed its prejudice.[7]

There is little doubt that the 1979 bank fraud conviction was reasonably close in time because it occurred during and was an important part of the commission of the present offense.

In making a similar determination in connection with the 1968 offense, we apply a reasonableness standard in ascertaining whether a prior criminal act is sufficiently close in time for it to be admissible on the issue of intent. Fed.R.Evid. 404(b); *United States v. Engleman*, 648 F.2d 473, 478 (8th Cir. 1981); *United States v. Frederickson*, 601 F.2d 1358, 1365 (8th Cir.), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979). In the *Engleman* case we determined that the defendant's participation in a scheme to defraud thirteen years prior to the mail fraud charges upon which he was tried was sufficiently close in time and similar in nature to render it admissible. Comparing cases such as *Engleman* with the present case, we conclude that in light of the similar nature of the offenses, the reasonable closeness in time of the prior offenses to the present offense, the relevance of the offenses, and the probative value of

lease of the witness from the confinement imposed for that conviction, whichever is the later date." This makes the time period in this case ten years and ten months.

There is no dispute the government notified defendant two months prior to trial of its intention to use the prior conviction.

6. The instruction was as follows:

The fact that the accused may have committed an offense at some time is not any evidence or proof whatever that, at a later time, the accused committed the offense charged in the indictment, even though both offenses are of a like nature, evidence as to an alleged earlier offense or of a like nature may not therefore be considered by the jury, in determining whether or not the accused did the act charged in the indictment. Nor may such evidence be considered for any other purpose whatsoever unless the jury first finds that other evidence in the case, standing alone establishes beyond a reasonable doubt that the accused did the act charged in the indictment.

If the jury should find beyond a reasonable doubt from the other evidence in the case that the accused did the act charged in the indictment, then the jury may consider evidence as to an alleged earlier offense of like nature, in determining the state of mind or intent with which the accused did the act charged in the indictment. And where all the elements of an alleged earlier offense are of a like nature or established by evidence which is clear and conclusive, the jury may, but is still not obliged to draw the inference and find that in doing the act charged in the indictment, the accused acted willfully and with specific intent, and not because of accident or other innocent reasons.

7. These factors are weighed in connection with Rule 404(b), which involves the admission of similar crimes. In finding such evidence admissible, it is necessary to balance its prejudicial effect against its probative value. *United States v. Engleman*, 648 F.2d 473 (8th Cir. 1981); *United States v. Frederickson*, 601 F.2d 1358, 1365 (8th Cir.), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

the prior offenses, the district court did not err in instructing the jury it could consider the evidence. Foley's activities over the years demonstrate a pattern of fraudulent conduct beginning with his conviction for mail fraud from which he was released from custody in 1970, and his conviction for bank fraud in 1979.

### B. *Instruction 13*

■ Foley contends that the district court improperly commented on the evidence in instruction 13. The full text of this instruction is as follows:

The gist of the offense charged in the indictment is the willful use of the telephone system to carry out a scheme to defraud and is not the scheme itself.

The defendant denies that the telephonic communication with Mr. Castleberry in any way related to the alleged scheme to defraud *but that the telephone call occurred before the defendant devised or intended to devise the alleged scheme to defraud.*

Now the Government must prove that *after Larry Foley had devised the scheme to defraud Mr. Castleberry* or while Larry Foley was intending to devise a scheme to defraud Mr. Castleberry, he then used the telephone in interstate commerce for the specific purpose of carrying out some essential step in the execution of the scheme to defraud.

If Larry Foley made an interstate telephone call to set up a meeting with Mr. Castleberry and when he made the telephone call he intended to defraud Mr. Castleberry at the meeting, he is guilty of the offense charged even if the scheme to defraud was not mentioned.

If on the other hand, Larry Foley had no intent to devise a scheme to defraud Mr. Castleberry when he made the telephone call in interstate commerce, and the intent to defraud, if any, was later formulated by Mr. Foley, he has not in-

tentionally used the telephone to carry out an essential step of the scheme to defraud and your verdict must be not guilty. (emphasis added)

Foley argues that the underlined portions constituted an impermissible comment on the evidence to the extent that it was incurably prejudicial. When reviewing an instruction, the court must examine the instruction in the context of the entire set of instructions. *United States v. Williams*, 604 F.2d 1102, 1120 (8th Cir. 1979); *United States v. Matthews*, 603 F.2d 48, 50 (8th Cir. 1979), *cert. denied*, 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 650 (1980); *United States v. Kershman*, 555 F.2d 198, 200 (8th Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977).

After reviewing the contested instruction in the context of the full set of instructions, we hold that the district court committed no error. The instructions clearly stated the government's burden, the elements[8] it must prove beyond a reasonable doubt, and the result of "not guilty" if the government did not establish its case.

### C. *Sufficiency of the Evidence*

■ Foley argues that the government failed to prove its case beyond a reasonable doubt because it did not sufficiently prove Foley's intent to defraud Castleberry. Foley claims he was unable to exercise the option to purchase NBC because of his incarceration. He states that there was no evidence that he "foresaw or could have foreseen this confinement when he dealt with Castleberry."

Foley's contention is wholly without merit. Foley himself testified that he was indicted on the bank fraud charge in February or March 1979. He conferred with and received payment from Castleberry in June 1979. He pleaded guilty to the bank charge on July 11. The sentencing judge told him at that time he could be fined up to $5,000 and sentenced to two years in prison. On

---

**8.** The elements in brief were: (1) that Foley devised or intended to devise a scheme to defraud Castleberry; (2) that Foley caused a telephone communication to be transmitted in interstate commerce; and (3) that Foley made the interstate communication wilfully and with the specific intent to carry out some essential step in the execution of said scheme.

July 16, he was sentenced to five months in prison. Even after this, he did not disclose his incarceration despite Castleberry's inquiries.

In light of this and other evidence, we find no error in the district court's denial of Foley's motion of acquittal for failure to provide sufficient evidence of guilt beyond a reasonable doubt.

### D. *Evidence of Telephonic Communication*

Foley argues that the district court erred in denying Foley's motion for acquittal based on the prosecution's failure to prove any transmission by means of wire, radio, or television communication within the meaning of 18 U.S.C. § 1343.[9] The record discloses that there was ample evidence that Foley called Castleberry on June 14, 1979, and set up a meeting to discuss the purchase of the NBC.[10] Foley bases his argument on the assertion that a witness testified that telephone communication can occur by means other than wire.

We have held:

> There is nothing in the statute to indicate that because a portion of the telephone calls in question were transmitted by microwave, a radio relay, they are not encompassed within the purview of the statute. Defendant has cited no authority, and we have found none, to support his contention.

*United States v. Bohr,* 581 F.2d 1294, 1303 (8th Cir.), *cert. denied,* 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978).

Foley's argument is, therefore, without merit.

### CONCLUSION

We affirm the district court.

Affirmed.

---

**9.** The statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1343.

**10.** *See* n.2, *supra.*