**UNITED STATES of America, Appellee,**

v.

**Robert L. MARSHALL, a/k/a Cito Marshall, Appellant.**

**No. 81–2027.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1982.

Decided Aug. 4, 1982.

Harden, Grace, Downing, Napper, Allen & East, Little Rock, Ark., for appellant.

George W. Proctor, U. S. Atty., Robert L. Neighbors, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Robert L. Marshall appeals his conviction under the Food Stamp Act (the Act), 7 U.S.C. § 2011 et seq., specifically, for buying food stamps valued at $100 or more for cash in violation of 7 U.S.C. § 2024(b)[1] and for presenting food stamps for redemption knowing them to have been received in a manner not authorized by the Act in violation of 7 U.S.C. § 2024(c),[2] entered in the District Court[3] for the Eastern District of Arkansas after a jury trial. For reversal Marshall argues that the district court erred (1) in admitting into evidence two food stamp compliance visit reports which suggested that Marshall had previously violated the Act, and (2) in denying his motion for a new trial based on newly discovered evidence allegedly suppressed by the United States Department of Agriculture. For the reasons discussed below, we affirm the district court.

Robert Marshall and Ann Marshall, his wife, own a grocery store located in Little Rock, Arkansas. Marshall has been an authorized food stamp retailer since October 1975. It is undisputed that Marshall purchased food stamps valued in excess of $100 for cash from Huston Harris, a government "investigative aide" on four occasions between February and April, 1981, and presented those food stamps for redemption at the First American Bank located in Little Rock, Arkansas. Marshall and his wife were subsequently arrested and charged with four counts of unlawfully acquiring food stamps and three counts of presenting food stamps for redemption knowing them to have been received in a manner in violation of the Act.[4]

At trial Marshall's defense was an alleged lack of knowledge that the food stamps in question had been acquired in a manner not authorized by the Act, which is an element of both offenses. In order to prove the element of knowledge, the government introduced the testimony of Harley Fancher, Jr., a food program specialist with the Food and Nutrition Service of the United States Department of Agriculture. Fancher testified that he had processed Marshall's 1975 food stamp retailer application and had at that time explained the Act and regulations and completed a "checklist" of requirements and prohibitions with Marshall. Fancher further testified as to two "compliance visits" to Marshall at his store on February 27, 1976, and April 7, 1978. Fancher made reports of these visits which state in pertinent part:

*February 23, 1976*

All elements of a compliance visit were covered with emphasis on cash for coupons ... ineligible items ...

I [discussed] the high rate of redemptions.... I informed [Marshall] of this office's concern that violations [of the Act] could be causing [the high redemption rate].

I do not believe the redemptions are reasonable ... and the redemptions should be monitored for three report periods.

1. 7 U.S.C. § 2024(b)(1) provides in relevant part:

   Subject to the provisions of paragraph (2) of this subsection, whoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by this chapter or the regulations issued pursuant to this chapter shall, if such coupons ... are of a value of $100 or more, be guilty of a felony ....

2. 7 U.S.C. § 2024(c) provides in relevant part:

   Whoever presents, or causes to be presented, coupons for payment or redemption of the value of $100 or more, knowing the same to have been received, transferred, or used in any manner in violation of the provisions of this chapter or the regulations issued pursuant to this chapter, shall be guilty of a felony ....

3. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

4. Ann Marshall was convicted but does not join in this appeal.

*April 7, 1978*

I contacted the owner [Marshall] regarding his erratic redemptions and his high redemption ratio. I informed him that this office was concerned of continued violations in spite of the warning letter of Oct. 21, 1977.... He remembered the letter but claimed he was talked into violating by someone he knew....

The district court admitted the reports into evidence under Fed.R.Evid. 404(b) on the basis that they were relevant to the issue of Marshall's knowledge that "cash for coupons" transactions were prohibited by the Act.

On appeal Marshall argues that the reports suggesting prior violations of the Act were not admissible under Rule 404(b). We disagree. Rule 404(b) provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ The rules for admission of other crimes or bad act evidence are well established: (1) the evidence of the bad act must be admissible on a material issue raised; (2) the evidence must be similar in kind and reasonably close to the charge at trial; (3) the evidence of the other crime or bad act must be clear and convincing; and (4) the probative value of the evidence must not be outweighed by its prejudice. *United States v. Frederickson*, 601 F.2d 1358, 1365 (8th Cir.), *cert. denied*, 444 U.S. 934, 100 S.Ct. 281, 62 L.Ed.2d 193 (1979).

■ In reviewing the admissibility of evidence this court applies an abuse of discretion standard. *United States v. Moss*, 544 F.2d 954, 960–61 (8th Cir. 1976), *cert. denied*, 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977). The trial court can in its discretion admit relevant evidence of other criminal and bad acts and "reversal is only commanded when 'it is clear that the questioned evidence has no bearing upon any of the issues included.'" *United States v. Conley*, 523 F.2d 650, 654 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976), *citing United States v. Thompson*, 503 F.2d 1096, 1098 (8th Cir. 1974). *Accord, United States v. Young*, 618 F.2d 1281, 1289 (8th Cir.), *cert. denied*, 449 U.S. 844, 101 S.Ct. 126, 66 L.Ed.2d 52 (1980).

■ In the present case Marshall concedes that evidence of his knowledge of the Act's prohibitions is relevant; however, he argues that the reports should not have been admitted because they do not constitute clear and convincing evidence of prior violations.

We disagree with respect to the April 7, 1978, report. That report contains Fancher's testimony that Marshall himself admitted violating the Act. Such an admission, if made directly, is clear and convincing proof of Marshall's previous violations of the Act.

■ It is questionable whether the district court should have admitted the February 23, 1976, report. This report does indicate that Marshall was informed of the prohibition against cash for coupon transactions but it is not clear and convincing proof of prior violations as required under Rule 404(b). However, the evidence contained in the report is merely cumulative. Fancher testified that he had personally explained the Act and completed a checklist of prohibitions with Marshall at the time Marshall applied to become a food stamp retailer. In addition, the April 7, 1978, report establishes that Marshall admitted violating the Act and was again informed of the Act's prohibitions. Therefore, the earlier February 23, 1976, report did not introduce new prejudicial evidence. We are convinced that the error, if any, was harmless beyond a reasonable doubt.[5]

■ Marshall next argues that the reports were not admissible under Rule 404(b)

---

5. We note that the report might arguably have been admissible under Rule 803(8) Fed.R.Evid., the "Public records and reports" exception to the hearsay rule.

because they were not made reasonably close in time to the violations charged at trial. We disagree.

"[T]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case." *United States v. Engleman*, 648 F.2d 473, 479 (8th Cir. 1981) (citations omitted).

In the present case the government's evidence of knowledge was supplied by Fancher's direct testimony regarding Marshall's 1975 application and the two compliance reports dated 1976 and 1978. On appeal Marshall does not challenge Fancher's direct testimony as being remote even though it related to an event that occurred three years prior to the second compliance report. We conclude that there is no basis to distinguish Fancher's direct testimony relating to Marshall's 1975 application and the subsequent compliance visits which indicate that Marshall was repeatedly informed of the Act's prohibitions. We cannot say that the district court abused its discretion in finding that the reports were not remote from the violations charged at trial. *See id.* (district court did not abuse its discretion in finding that thirteen years was not an unreasonable time).

█ Marshall's final argument against the admissibility of the reports is that their prejudice outweighed their probative value. We disagree.

Fed.R.Evid. 403 authorizes the district court to exclude evidence, even though relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice...." Our task is to assess the relevancy of the challenged evidence. If it meets the requirements of Rule 404(b), we may not reverse the ruling of the district court unless we also find that the prejudice from admitting the evidence substantially outweighed its probative value. *See United States v. Robbins*, 613 F.2d 688, 695 (8th Cir. 1979). In making that determination we must give great deference to the district judge who saw and heard the evidence. *United States v. Weir*, 575 F.2d 668, 670

(8th Cir. 1978). "'Unfair prejudice' [under Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Note, Rule 403, Fed.R.Evid.

In examining the reports we note that they were relevant to a material issue, were not too remote in time, were reasonably similar, and the 1978 report was clear and convincing evidence of a prior violation. When comparing these factors against possible prejudice, we conclude that the district court did not abuse its discretion in determining that the prejudicial impact of the challenged evidence did not substantially outweigh its probative value. *See United States v. Two Eagle*, 633 F.2d 93, 97 (8th Cir. 1980).

█ Marshall's second argument is that he should have been granted a new trial on the grounds of newly discovered exculpatory evidence. The evidence at issue is a letter from Food Stamp Review Officer Larry Rose reversing Marshall's 1979 administrative disqualification from the food stamp program. The basis of the disqualification was a finding that during 1979 Marshall redeemed a higher dollar amount of food stamps than his reported food sales. Rose reversed the disqualification because following the disqualification Marshall produced sufficient records to satisfy Rose that his 1979 food stamp redemptions did not exceed his food sales. The letter, dated June 25, 1981, was not received by Marshall's attorney until June 29, 1981, the same date as Marshall's trial. The district court dismissed the motion based on its finding that the letter did not contain exculpatory evidence and was not material to the issues raised in the indictment. We agree.

The sole issue at trial was whether Marshall knew that the four cash for coupon transactions occurring between February and April, 1981 violated the Act. Rose's letter, which provides in pertinent part,

Food stamp redemption records for the firm [Marshall's] disclosed that your

client has redeemed a total of $95,635 in food stamp coupons during 1979. As food stamps can be legally accepted by participating stores only for eligible food merchandise, and this store's sales of such merchandise totaled only $82,623 during the same one-year period, it was concluded that this disparity was attributable to your client's acquisition of food stamps in some manner other than eligible food sales and, therefore, in violation of federal regulations . . . ,

is not exculpatory on this issue. Although Rose concluded that the 1979 disparity between the amount of food stamps redeemed and the amount of food sold was due to recordkeeping errors, the letter indicates that Marshall was again warned that food stamps could only legally be accepted for eligible food merchandise. We therefore conclude that the alleged omission of the Rose letter was neither exculpatory nor material to any issue in the case. *See United States v. Agurs*, 427 U.S. 97, 112–14, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1975) (proper standard of materiality of undisclosed evidence is that if omitted evidence creates a reasonable doubt of guilt that did not otherwise exist, constitutional error has been committed).

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

The only issue in the trial below was whether the defendant's exchange of cash for food stamp coupons, in March of 1981, was done with knowledge that such exchanges are illegal. The government thus properly offered the direct testimony of a USDA official to the effect that, during 1976 and 1978 visits with the defendant, the official informed him of the prohibition on cash exchanges. The government also introduced, as public business records under Rule 803(8), two memoranda written by the official in connection with the two visits. The government contends these records were not offered to prove "prior bad acts" under Rule 404, but were offered only to confirm the official's testimony as to what he told the defendant during the two visits.

The majority notes without holding that the memoranda might "arguably" be admissible under Rule 803(8). *See, supra*, at 1215, n.5. That exception to the hearsay rule, however, excludes in criminal cases the introduction of matters observed by "law enforcement personnel." In the present case, records of USDA "compliance visits" would thus appear to be outside the exception under Rule 803(8). In any event, the majority's holding recognizes that when the records sought to be introduced facially involve prior misconduct, their introduction is governed by Rule 404.

Here, the memoranda incorporate a variety of unproven and unfairly prejudicial assertions of misconduct. The 1976 memorandum describes an allegedly high redemption rate for coupons at the defendant's grocery and the possibility that unspecified "violations" could be causing it. The memo specifically asserts a sharp rise in redemptions without an accompanying rise in sales. It also characterizes the defendant's business as charging high prices while offering less food stocks than competitors. The 1978 memo mentions an earlier "warning letter," although such letter was never introduced and the nature of such warning was never explained. It also refers to an alleged admission by the defendant as to having once committed a violation, without explaining whether the purported admission related to cash exchanges. The memo also describes "concern" over "continued violations," again without explanations of whether such violations ever were proven or whether they related to cash exchanges. It also emphasizes what are characterized as "excessive" rates of redemption.

In my view, it is obvious these records were introduced to show bad character on the part of the defendant, which is impermissible under Rule 404 unless, as the majority notes, the probative value of the evidence outweighs its prejudicial effect and the evidence of specific misconduct is "clear and convincing." *See, supra*, at 1215. Here, the evidence meets neither criteria.

The probative value of the memoranda is purportedly to confirm the official's testimony in order to meet any challenge to his memory or recollection, although no such attack was made. If such a line of questioning had been pursued on cross-examination, the documents could have been tendered on redirect. Even assuming the documents were relevant for corroboration purposes, they could have been purged of the extraneous accusations and innuendos so as to avoid unfair prejudice. Instead, the documents were introduced in their entirety, without even a cautionary instruction, thus putting before the jury a series of unproven hearsay assertions as to the defendant's alleged prior misconduct, suspiciously high rates of redemption and generally disfavored business practices. On the question of defendant's knowledge, the probative value of such unpurged evidence is far outweighed by the unfair prejudice it causes.

The majority nonetheless approves the admission of such evidence as "clear and convincing" proof of prior, relevant misconduct. In fact, the 1978 memo does not even specify what "violation" it was the defendant supposedly admitted, nor does it specify what "continued violations" were the object of the official's concern. Moreover, no proof of any violation is referred to in the memo, nor was any otherwise established at trial. The 1976 memo does not even allege misconduct but only speculates that violations, again unspecified, *might* be the cause of the high redemption rate. If such unexplained hearsay assertions meet the "clear and convincing" standard, then I must doubt the continued vitality of this requirement for admission of prior misconduct evidence.

Finally, the prejudice to the defendant from admitting these memoranda was compounded by the government's failure to timely disclose a 1979 determination by the USDA that the defendant had been wrongly disqualified from the food stamp program. Essentially, the 1979 letter showed that the defendant's supplemental evidence as to the level of his food sales sufficiently explained the allegedly high redemption

rate which had led to his administrative disqualification from the program. I recognize that this determination does not directly bear on whether the defendant knowingly made cash exchanges for food stamps. The government, however, introduced the 1976 and 1978 memoranda which underscored the suspiciously high redemption rates at the grocery, obviously hoping that jurors might draw the same adverse inferences which are expressed in the memoranda. The 1979 determination is exculpatory because it shows that such inferences might well be improper and that USDA officials may well rush to judgment unfairly. If the government is going to introduce the memoranda giving rise to the adverse inferences, it must timely disclose the information in its possession which would negate such inferences. Here, it disclosed the 1979 determination by letter to defendant's counsel which arrived at counsel's office on the day of trial. Because it was a one-day trial, the defendant clearly was denied exculpatory use of the USDA's belated determination.

I would reverse defendant's conviction because it is so heavily tainted by impermissible hearsay evidence and by the government's improper withholding of evidence which might have remedied at least some of the unfair prejudice that resulted. The defendant could, of course, be tried again with the prejudicial evidence excluded.