UNITED STATES of America, Appellee,

v.

Theodore C. MILLER, Appellant.

UNITED STATES of America, Appellee,

v.

Rodney Allen VAN BEEK, Appellant.

Nos. 82–2049, 82–2055.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1983.

Decided Jan. 24, 1984.

McMILLIAN, Circuit Judge.

Theodore C. Miller and Rodney Allen Van Beek appeal from final judgments entered in the District Court[1] for the District of South Dakota upon jury verdicts finding them guilty of conspiracy (18 U.S.C. § 371), interstate transportation of property obtained by fraud (18 U.S.C. § 2314), receipt and sale of stolen property (18 U.S.C. § 2315) and wire fraud (18 U.S.C. § 1343). Appellants' indictments for the above offenses, as well as for mail fraud (18 U.S.C. § 1341), arose out of a cattle transaction undertaken for the purpose of collecting a debt owed to appellant Miller. Appellants were tried together along with two other defendants as co-conspirators. For reversal each appellant argues that the district court erred in (1) admitting evidence. of other wrongs or acts of appellant Van Beek, (2) admitting out-of-court statements of co-defendants, (3) refusing to give the jury a good faith instruction, (4) refusing to admit certain evidence of a debt owed to appellant Miller and of Miller's plan to collect it, and (5) denying each appellant's motion for severance. In addition, appellant Van Beek argues that the district court erred in (1) refusing to instruct the jury that specific intent was a necessary element for violation of 18 U.S.C. §§ 2314 and 2315, (2) refusing to give the jury an instruction on undisclosed agency, (3) refusing to admit evidence of a debt he was hired to collect, and (4) denying his motion for acquittal. For the reasons discussed below, we affirm the convictions of both appellants.

The evidence adduced at trial established the following rather complicated events leading to the indictments. In October of 1980, Tunis Jansma, a cattle rancher in Iowa, engaged two men, James Van Bockern and Rodney Allen Van Beek, to collect two debts allegedly owed to him. One debt in the amount of approximately $48,000 was to be collected from Theodore (Ted) Miller, a cattle rancher and businessman in Mon-

David L. Bergren, Fort Pierre, S.D., for appellant, Theodore C. Miller.

Philip N. Hogen, U.S. Atty., Sioux Falls, S.D., David L. Zuercher, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before ROSS, McMILLIAN and BOWMAN, Circuit Judges.

1. The Honorable Donald J. Porter, United States District Judge for the District of South Dakota.

tana, and the other in the amount of approximately $29,000 from Duane Burton and Jerry Roseth who together operated the Philip Livestock Auction in South Dakota. Pursuant to this agreement, Van Beek and Van Bockern went to South Dakota, contacted Burton and Roseth, and asked for the money owed Jansma. Both Burton and Roseth denied that they owed Jansma any money. Roseth testified that Van Beek threatened to harm his wife and children if the money were not paid.

From South Dakota, Van Beek and Van Bockern proceeded to Montana and met with Ted Miller and his son and business associate, Dennis Miller. Ted Miller told Van Beek and Van Bockern that he would pay them and Jansma a total of $75,000 if they would help him collect a $115,000 judgment debt which David John Mulso, a cattle order buyer in South Dakota, owed him. Ted Miller suggested that this could be done by Van Beek or Van Bockern ordering cattle from Mulso and delivering the cattle to Miller. Miller would then pay Mulso with a sight draft, resell the cattle, keep the proceeds, and when Miller's bank honored the draft, execute on Mulso's money from the draft before it left the bank.

Van Beek and Van Bockern returned to Iowa and reported to Jansma what transpired at their meetings with Burton, Roseth and the Millers. They agreed that they would help Miller carry out his plan to collect the Mulso debt and Jansma advised Van Bockern, who was not a cattleman, on the number and type of cattle to order from Mulso.

On November 19, 1980, Van Bockern telephoned Mulso, identified himself as John Van Gammeren, who was a cattleman in Iowa, and asked Mulso to purchase four truckloads of cattle for him and send them to Iowa in trucks which would be provided. After checking into Van Gammeren's credit reliability, Mulso purchased the cattle requested on November 19 and 20, 1980, for a total, including his commission, of $163,-280.85. The cattle were sent by truck to Sioux Falls, rerouted from there, and ultimately sent to a sales barn in Nebraska where they were met by Dennis Miller, Van Beek, Van Bockern and Jansma. Dennis Miller gave Jansma a signed sight draft made out to Mulso in the amount of $163,-280.85.

The next day, on November 22, 1980, the cattle were sold at the Nebraska sales barn in Ted Miller's name and checks for the proceeds issued in his name were given to Dennis Miller. Having completed their end of the bargain, Van Beek and Van Bockern requested a cash payment for their services. They insisted that Dennis Miller accompany them to South Dakota and stay with them until Ted Miller brought the cash. On November 24, 1980, Ted Miller came to South Dakota and gave Van Beek, Van Bockern and Jansma $77,200.00 in cash (representing the agreed upon $75,000 plus $2,200 which Van Beek paid the truckers for transporting the cattle from South Dakota), whereupon Ted and Dennis Miller left.

Meanwhile the manager of the Nebraska sales barn, suspecting that something was not quite right with the sale, telephoned Ted Miller. After discussing the matter with Miller, the manager told him that he was stopping payment on the checks for the proceeds of the sale. The manager also called Mulso and advised him of the situation. Miller then told his bank not to honor the sight draft to Mulso when presented for payment. Thus, Ted Miller's original plan unravelled. On November 29, 1980, Mulso received the sight draft and deposited it in his bank. On December 3, 1980, Miller's bank refused to honor the sight draft. Thereafter, the Nebraska sales barn sent Mulso a check in the amount of $156,553.27 for the proceeds of the sale of the cattle.

On the same day that Van Bockern ordered the cattle from Mulso, Van Beek initiated another and separate cattle transaction in an attempt to collect the money Jansma claimed Roseth and Burton owed him. Van Beek purchased cattle from Philip Livestock Auction through an order buyer. Roseth, alerted that Van Beek was not a legitimate buyer, flew to Sioux Falls, met Van Beek and demanded payment for the cattle. Van Beek told Roseth that the cat-

tle would not be paid for until Roseth paid the money owed to Jansma. Roseth traced the cattle to Jansma's brother-in-law's ranch, repossessed them and sent them back to South Dakota.

Indictments were filed against Van Beek, Van Bockern, Jansma, Dennis Miller, and Ted Miller, as co-conspirators, for the above cited offenses based on the Mulso cattle transaction. The Roseth-Philip Livestock transaction was not a basis for the indictments. Van Bockern agreed to testify for the government in exchange for immunity. The other four defendants were jointly tried. Dennis Miller and Jansma were acquitted; appellant Van Beek was sentenced to four terms of imprisonment of five years, each to run concurrently; appellant Ted Miller was sentenced to four concurrent three-year terms of suspended imprisonment with two years probation, and fines totalling $31,000.00.

*Evidence of Other Acts*

At trial, evidence on Van Beek and Van Bockern's meetings with Roseth and Burton, including Van Beek's threat to Roseth, and on the Philip Livestock cattle transaction was admitted. Both appellants argue that this evidence of other wrongs or acts was inadmissible and highly prejudicial.

As noted above, the Roseth-Philip Livestock affair was not a charged crime. Fed. R.Evid. 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that conduct on a particular occasion was in conformity with it. However, the evidence may be offered for other purposes, such as proof of motive, intent, preparation, plan, knowledge, or absence of mistake.

■ The requirements for admission of other wrongs or acts evidence are well established in this circuit: (1) the evidence of the other act must be relevant to a material issue; (2) the other act must be similar in kind and reasonably close in time to the crime charged; (3) the evidence of the other act must be clear and convincing; and (4) the probative value of the evidence must not be outweighed by its prejudice. *E.g.*,

*United States v. Marshall,* 683 F.2d 1212, 1215 (8th Cir.1982); *United States v. Burchinal,* 657 F.2d 985, 993 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); *United States v. Calvert,* 523 F.2d 895, 906–07 (8th Cir.1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). If the evidence is admitted, the court should give a limiting instruction informing the jury of the narrow purpose for which it has been admitted. *United States v. Calvert,* 523 F.2d at 907.

■ Where, as here, intent is an element of the crime or crimes charged, evidence of other acts tending to establish that element is generally admissible. *United States v. Burchinal,* 657 F.2d at 993. Furthermore, the government need not await the defendant's denial of intent before offering evidence of similar acts relevant to that issue. *Id.; United States v. Engleman,* 648 F.2d 473, 478–79 (8th Cir.1981).

■ In this case, evidence of the Roseth-Philip Livestock transaction was relevant to Van Beek's intent in addition to showing a common plan or scheme. The Roseth-Philip Livestock transaction was similar in kind and close in time to the Mulso cattle transaction, and the evidence regarding the former was clear and convincing. In determining whether the prejudicial impact of the challenged evidence outweighed its probative value, the district court is afforded broad discretion, *United States v. Marshall,* 683 F.2d at 1216, which was not abused in this case. Finally, we note that the trial court properly instructed the jury as to the narrow purpose for which the challenged evidence was admitted. The trial court also specifically told the jury that none of the defendants were on trial for any conduct not alleged in the indictments and that evidence of the Roseth-Philip Livestock transaction was not to be considered in any way as to the two Miller defendants who were not involved in that matter.

Statements of Co-defendants

■ At trial, agents of the Federal Bureau of Investigation were permitted to tes-

tify to out-of-court statements made by each of the defendants. When the statements made by Jansma, Dennis Miller and Ted Miller were introduced into evidence, the jury was instructed, at the government's request, that they were to consider each statement only against the defendant who made it. As against the defendant who made the statement, the evidence was not hearsay but an admission by a party opponent under Fed.R.Evid. 801(d)(2)(A).

■ Admission of the evidence regarding the statement made by Van Beek, however, was not accompanied by a similar cautionary instruction and appellant Miller argues that its admission was therefore reversible error as to him. We first note that Van Beek's statement was not admissible against his co-defendants under Fed.R.Evid. 801(d)(2)(E) as a statement by a co-conspirator because it was not made during the course of or in furtherance of the conspiracy. See United States v. Engleman, 648 F.2d at 482; United States v. Knife, 592 F.2d 472 (8th Cir.1979). Nevertheless, we hold that admission of the FBI agent's testimony was not reversible error. At trial, this evidence was not objected to by any of the defendants as hearsay.[2] Miller's contention now that the evidence was inadmissible hearsay is therefore reviewable only under the plain error standard. United States v. Johnson, 570 F.2d 836, 838 n. 1 (8th Cir.1978). Van Beek's statement was merely cumulative in nature, confirming appellant Miller's own version of events, and not essential to the government's case. Miller has never denied his involvement in the scheme to get the cattle from Mulso. His only defense was that he thought the transaction was a valid execution on a debt. Thus no plain error was committed. See

United States v. Moss, 544 F.2d 954, 958, 960 (8th Cir.1976), cert. denied, 429 U.S. 1077, 97 S.Ct. 822, 50 L.Ed.2d 797 (1977); Minor v. United States, 375 F.2d 170, 174 (8th Cir.), cert. denied, 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177 (1967).[3]

*Severance*

Each appellant argues that he should have been severed for trial from the other defendants. Van Beek bases his argument on the grounds that his defense was antagonistic to that of the other defendants and that the jury could not have properly compartmentalized all the evidence against each defendant. Miller argues that he was unduly prejudiced by admission of evidence on the Roseth-Philip Livestock transaction, despite the district court's cautionary instructions that this evidence was only to be considered against his co-defendants Van Beek and Jansma.

■ The general rule is that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts. United States v. Boyd, 610 F.2d 521, 525 (8th Cir. 1979), cert. denied, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980); United States v. Jackson, 549 F.2d 517, 523 (8th Cir.), cert. denied, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Severance will be allowed upon a showing of real prejudice to an individual defendant. The motion to sever is addressed to the sound discretion of the district court, and a denial of severance is not grounds for reversal unless clear prejudice and an abuse of discretion are shown. United States v. Burchinal, 657 F.2d at 995.

---

**2.** The Miller defendants objected, but only to that portion of Van Beek's statements regarding the Roseth-Philip Livestock transaction on the ground that the Millers were not involved in that transaction. The district court immediately and thoroughly cautioned the jury that evidence of that transaction could not be considered against the Millers in any way.

**3.** For the same reasons, although Van Beek did not testify, appellant Miller's reliance on *Bru-*

ton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is misplaced. The holding in that case that admission of an extrajudicial statement of a nontestifying co-defendant violates a defendant's rights under the confrontation clause of the sixth amendment is not applicable to this case where Van Beek's statement to the FBI agent was in no way damaging or "devastating" to Miller. See id. at 128, 136, 88 S.Ct. at 1623, 1628.

**468**

■ Van Beek has not shown prejudice due to irreconcilable defenses. To show an abuse of discretion, a defendant must show more than that his strategy was generally antagonistic to that of the other co-defendants. The fact that there is hostility among the defendants or that one defendant may try to save himself at the expense of another is not sufficient grounds to require separate trials. *United States v. Boyd,* 610 F.2d at 526.

■ Severance does become necessary "where the proof is such that a jury could not be expected to compartmentalize the evidence as it relates to separate defendants." *United States v. Jackson,* 549 F.2d at 525. Our review of the record in this case convinces us that the jury could easily have separated and appraised the independent evidence against each defendant. The limited application of the evidence adduced regarding the Roseth-Philip Livestock transaction was adequately explained to the jury when necessary during the process of the trial. We therefore find that the failure to grant appellants' motions for severance was not an abuse of discretion.

*Refusal to Admit Evidence and to Give Good Faith Instruction*

■ Several points raised on appeal relate to appellants' intent in participating in the Mulso cattle transaction. Error is claimed in the district court's refusal to admit documentary evidence proving the validity of the debts owed by Mulso to Miller and by Roseth and Burton to Jansma. Appellant Miller also argues that he was improperly limited in presenting evidence that he planned to execute on the funds payable to Mulso and that he thought this was legal execution on a debt.

We hold that the district court properly refused to admit this evidence pursuant to Fed.R.Evid. 403, which allows the court to exclude evidence which would tend to confuse or mislead the jury or which would be cumulative. In this case the amounts of the debts were in evidence and not disputed. Nor was it disputed that the purpose of the Mulso cattle transaction was ultimately

to collect a debt which Mulso owed Miller. Appellants' attempt, however, to characterize the entire transaction as a good faith and legitimate debt collection attempt is misleading and diverts attention from the crimes for which they were charged. *See United States v. Ness,* 665 F.2d 248, 250–51 (8th Cir.1981). It was the knowingly fraudulent means used to get the cattle from Mulso that was the basis of all the crimes charged. For the same reason, neither appellant was entitled to a good faith instruction and appellant Van Beek was not entitled to an instruction on undisclosed agency.

*Specific Intent Instruction*

■ Appellant Van Beek argues that the district court erred in refusing to instruct the jury that specific intent was a necessary element of 18 U.S.C. § 2314 (interstate transportation of property taken by fraud) and 18 U.S.C. § 2315 (receipt and sale of stolen property).

The statutory language of the relevant paragraphs of both these sections requires knowledge on the part of the defendant that the property was taken by fraud. Our review of the instructions in this case leads us to conclude that the jury was clearly required to find the requisite criminal intent and knowledge and that the charge to the jury was fair and balanced.

*Sufficiency of the Evidence*

■ Finally, appellant Van Beek argues that the district court should have granted him an acquittal based on insufficiency of the evidence. We find this claim totally without merit.

Accordingly, we affirm the judgments of the district court.