**UNITED STATES of America, Appellee,**

v.

**John L. MARTIN, Appellant.**

No. 85–5402.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1986.

Decided Aug. 12, 1986.

Stanley E. Whiting, Winner, S.D., for appellant.

David L. Zuercher, Pierre, S.D., for appellee.

Before ROSS and ARNOLD, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

A jury found John L. Martin guilty of an indictment's single count that "on or about the 11th day of June, 1984 John L. Martin did transport in interstate commerce to the State of Minnesota and the District of Columbia from Chamberlain in the District of South Dakota security, that is, a check of the value of $27,500.00, knowing the same to have been taken by fraud in violation of 18 U.S.C. § 2314." On appeal, Martin argues that he is entitled to a new trial because the district court [1] erred in eliciting inadmissible hearsay testimony, in prohibiting the introduction of relevant exhibits, and in refusing to give certain jury instructions. We affirm.

Martin worked for his cousin, Gerald Martin, who owned Modern Grain Systems, Inc. The company was in the business of selling grain bins and dryers. The main office was located in Amboy, Minnesota. Martin worked on a commission basis as a salesman in South Dakota where the company was known as Modern Grain Systems. In June, 1983 he sold several grain bins and a grain dryer to Crow Creek Farm Corporation, which was owned by the Sioux Tribe, for $181,350.00. Martin testified he was to receive 50% of the $55,000.00–$60,000.00 profit as his commission, but his cousin testified that he was to receive only 35% of the profit.

Crow Creek Farm Corporation dealt with Modern Grain Systems primarily through Martin. Over a period of time it gave him several checks for a total amount of approximately $126,350.00. He endorsed the checks and deposited them in the Norwest Bank in Chamberlain, South Dakota, where the corporate account for Modern Grain Systems, Inc. was maintained. Martin was not authorized to sign checks on the corporate account. It was arranged that the balance of the amount owed, $55,000.00, would be paid in two installments with a 15% interest rate. One-half was to be paid on November 15, 1983 and the other half on November 15, 1984. The November, 1983 payment was made without problem. Crow Creek Development Corporation wrote out a check for $35,750.00 to "Modern Grain Co." This represented $27,500.00 in principal, and $8,250.00 in interest. Martin received the check, endorsed it, and deposited it in Modern Grain Systems' bank account. His cousin appears to have paid him and his wife $2,200.00 from the proceeds of this check.

Gerald Martin testified that in January, 1984 he informed Martin by telephone that his job with Modern Grain Systems was terminated. Modern Grain Systems had financial problems and apparently closed down sometime during the first six months of 1984. All of the company's accounts receivable had been pledged to the Security National Bank of Amboy, Minnesota. Martin was aware that his cousin was having financial problems, but he denied that his cousin ever told him that his job was termi-

nated. He testified that he believed he was an agent for the company until August, 1984. In February, 1984 Martin opened a bank account under the name Modern Grain in the Tri-County State Bank in Chamberlain, South Dakota and listed himself as the authorized signer. He testified that he opened the account so that he could go into business for himself.

Around May, 1984 Martin approached Dale Broscha, the Sioux Tribal Finance Officer, and offered to waive the interest due on the last payment, which Broscha said was approximately $3,000.00,[2] if the Tribe would make the payment early, rather than waiting until November. On June 11, 1984 Martin sent a letter to Crow Creek Farm Corporation making the offer in writing. The envelope carried Modern Grain Systems' return address and the enclosure carried Martin's name and his title of sales representative for Modern Grain Systems.

Broscha, believing that Martin had the authority to make this offer, agreed to make the early payment to Modern Grain Systems in return for the waiver of interest.

At trial, Martin admitted that he took early payment of the check and waived interest without consulting his cousin, and that he took the check intending to keep it for himself. He deposited it in the account he had opened at the Tri-County Bank and then used the money for his personal purposes.[3] Martin's defense in essence is that he had authority to take the check and that the proceeds of the check belonged to him as his share of the profit on the Crow Creek job. He contends that he committed no fraud because he believed that he was entitled to the check; in other words, he believed he was taking his own money. Whether the company owed Martin money is not a basic issue in this case. The existence of the debt does, of course, relate to his motive. The issue is whether Modern Grain Systems authorized Martin to take

the check and its proceeds or whether he obtained and converted it by fraud. *See United States v. Miller,* 725 F.2d 462, 468 (8th Cir.1984) (fraud cannot be used to obtain payment of a debt). The jury by its verdict found that he knowingly obtained and converted the check through fraud.

■ As his first point of error Martin alleges that the trial judge elicited inadmissible hearsay. During the trial, the government called as a witness George Meyers, who was a bank officer for Security National Bank of Amboy, Minnesota. Meyers testified that all of Modern Grain Systems' employees had been terminated by May, 1984. On cross-examination he testified that he did not have any personal knowledge whether anyone contacted Martin and told him he was terminated. At this point the trial judge intervened and asked Meyers about the source of his knowledge. Meyers stated that he had been out to the company a number of times, that no one was there and the business was closed. He then went on, over Martin's objection, and stated that Gerald Martin (the cousin) and Gloria Mack, the company bookkeeper, had told him that all the employees had been terminated. The trial judge instructed the jury to disregard the statements that Meyers attributed to Mack, but allowed the jury to consider the statements attributed to Gerald Martin.

The trial court cured any error concerning Mack's statements by telling the jury to disregard them. The statements attributed to Gerald Martin were admissible under Fed.R.Evid. 801(d)(1)(B) as rebuttal to an implied charge of recent fabrication. *See United States v. Lanier,* 578 F.2d 1246, 1256 (8th Cir.) (testimony of third party may be used to introduce the prior consistent statement of a witness when the cross-examination of the witness raised the implication that he had fabricated his story), *cert. denied,* 439 U.S. 856, 99 S.Ct. 169,

---

**2.** Actually, at the time payment was made in June, 1984 the interest due was more nearly $2,400.00.

**3.** The Crow Creek Farm Corporation check went from the bank in Chamberlain, South Dakota to Minneapolis, Minnesota, and from there to Washington, D.C. This satisfied the statutory requirement of interstate transportation.

58 L.Ed.2d 163 (1978). When cross-examining Gerald Martin the defense elicited the information that no written notice had been sent to Martin and no notation was made in the company books concerning his termination. The obvious implication was that Gerald Martin was lying.

Martin next argues that the trial court erred in refusing to admit exhibits which demonstrated the costs and profits on the Crow Creek Farm Corporation contract, and which showed that Martin collected and endorsed the earlier checks to Modern Grain Systems. The trial court denied admission of these exhibits under Fed.R.Evid. 403 on the basis that it would mislead the jury. In *Miller*, a case in which the defendants had attempted to use fraud to collect a judgment debt, we addressed a similar issue. 725 F.2d at 468. Defendants had alleged the trial court erred in refusing to admit evidence which would prove the validity of the debt. *Id.* We stated that the defendants' attempt "to characterize the entire transaction as a good faith and legitimate debt collection attempt is misleading and diverts attention from the crimes for which they were charged. It was the knowingly fraudulent means used to get the [money] that was the basis of all the crimes charged." *Id.* (citation omitted). Even if the company owed Martin the money, as it probably did, he was not entitled to obtain his money by the use of fraud. We further note that most, if not all, of the evidence contained in Martin's proposed exhibits was brought to the attention of the jury through the testimony of various witnesses. Thus, while we find no error in exclusion of the exhibits in question, error assumed, exclusion was harmless.

Finally, Martin argues that the instructions were erroneous because they did not contain a specific intent and good faith instruction, and because they were too narrow in definition. We have examined the instructions and find no reversible error. No instruction on good faith was specifically requested, and the jury was properly instructed on the intent required by the statute. Furthermore, Martin's proposed instruction number four which states in part, "You may not find Martin guilty unless you find beyond a reasonable doubt that he knew that he was not entitled to any of the monies represented by the check," is not an accurate and complete statement of the law in the context of this case. As we stated above, even if the company did owe Martin money, he was not entitled to use fraud to obtain it.

In essence, this is a case where the defendant used self-help to obtain payment of a debt. The evidence indicated that Martin believed that if he gave the check to Modern Grain Systems he would never get his commission. So he took the check and converted it to his own use by putting it in his bank account, which had a similar company name. The fact remains, however, that Crow Creek Farm Corporation owed the money to Modern Grain Systems by contract, and Modern Grain Systems had the right to the check. The jury well could have found that the company never authorized Martin to take the check and keep it for himself. Simply put, Martin did not have the right to take the money from the till rather than wait for the paycheck.

The judgment of the district court is affirmed.