NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0025n.06
Filed: October 13, 2004
No. 02-6251

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE AT |
| WILLIAM E. CLARK, | ) | KNOXVILLE |
| | ) | |
| Defendant - Appellant | ) | |
| . | ) | OPINION |
| | ) | |

**Before: COLE and NORRIS, Circuit Judges; and ECONOMUS, District Judge.[*]**

This case arises from the indictment, trial and conviction of Defendant-Appellant William Earl Clark on charges of possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C). On appeal, Clark attacks the sufficiency of the indictment, alleging that it failed to state an essential element of the charge against him, to wit, the quantity of crack cocaine attributed to him, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Clark also challenges the Eastern District of Tennessee's jury selection process, citing the absence of blacks from both the jury venire and the petit jury that convicted him. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Finally, Clark asserts that the district court's admission of video and testimonial evidence of Clark's prior bad acts violated Rules 403 and 404(b) of the Federal Rules of Evidence. For the reasons stated below, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On April 10, 2001, Knoxville Police Department Officers Greg Womac, Terry Clowers, Felix Vess, and John Williams entered Apartment 266 of the Lonsdale Housing Development in Knoxville, Tennessee, to serve Clark with several outstanding warrants for his arrest.  Upon entering the apartment's bedroom, Officer Clowers and Officer Womac observed Clark attempting to hide underneath a table next to the bed.  Following the officers' instructions, Clark slid out from underneath the table and remained lying on the floor face down while Officer Womac hand-cuffed him.  When Officer Womac attempted to assist Clark to his feet, a prescription bottle fell from Clark's waist area and rolled against the dresser.  Recovering the bottle, Officer Womac observed what appeared to be approximately twenty rocks of crack cocaine inside.  A lab test later confirmed that the prescription bottle contained 3.58 grams of cocaine base, also known as "crack" cocaine.

On December 19, 2001, a federal grand jury sitting in the Eastern District of Tennessee at Knoxville returned a one-count drug trafficking indictment against Clark, charging him with possession of crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C).  The indictment failed to specify a drug quantity.

Prior to trial, the government provided notice of its intent to introduce evidence of other acts pursuant to Rule 404(b) of the Federal Rules of Evidence.  Specifically, the government gave notice that it intended to introduce testimony and video-taped surveillance of Clark distributing crack cocaine within the 18 months preceding his April 10, 2001 arrest.  Clark objected by filing two motions in limine, and, on the morning of the first day of trial, the district court heard argument from counsel on the motions.  Following argument, the court orally overruled Clark's motions in limine and admitted the 404(b) evidence.

2

The court then called the jury venire into the courtroom and conducted voir dire. Following completion of voir dire, defense counsel objected to the lack of any African-Americans in the venire, and stated that he would be looking into the issue. The court advised that it would entertain the issue at the end of the day.

Following opening arguments, Officer Womac took the stand and testified as to the details of Clark's arrest and the confiscation of the prescription bottle. A laboratory technician from the Tennessee Bureau of Investigation Crime Laboratory later testified that the rocks inside the bottle constituted 3.58 grams of crack cocaine.

Further evidence focused on whether Clark had the requisite intent to sell the crack cocaine found in the prescription bottle. Dave Lewis, a special agent for the Drug Enforcement Administration, testified that, in his expert opinion, the packaging and number of rocks inside the pill bottle indicated possession with intent to sell. Specifically, Lewis testified that:

> A person that's possessing drugs for personal use in no way would possess 20 to 23 rocks of crack cocaine at any one time; and [further], the size of the rock itself, along with the quantity of the rocks, shows me this is crack cocaine that's possessed for the purpose of distribution.
>
> These are 20-dollar rocks on the street. A person would drive up to the distributor, "I need a 20," and this would be what they were referring to. The particular size of the rock that's a commonly purchased size that a person would purchase for use, they would purchase one, maybe two rocks at one time; usually one rock.
> \* \* \* \* \* \* \* \* \*
> [O]ne thing you should not be confused about is the amount that's possessed for personal use and the amount that's possessed for distribution. And in my investigations, there's no – it's very easy to discern that.

(Joint Appendix, at 184-86).

A former girlfriend of Clark's, Cari Ramsey, testified that, while living in the Lonsdale Housing Development, she frequently observed Clark selling crack cocaine from the porch of a

3

nearby apartment building. Immediately following her testimony, the court gave the following

limiting instruction to the jury:

> Members of the jury, you have just heard testimony from Ms. Ramsey that the defendant committed an act or acts other than the ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he is on trial for now. Instead you can only consider it in deciding whether the defendant possessed the requisite specific intent to distribute the cocaine base that is charged in this indictment, but do not consider it for any other purpose. And remember that defendant is on trial here only for the offense charged in this indictment.

(Joint Appendix, at 200).

Officer Vess then took the stand and testified that on February 11, 2000, while videotaping

from an upstairs apartment window in the Lonsdale Housing Development, he captured the

defendant on videotape selling what appeared to be crack cocaine. The prosecution then played a

three minute portion of the videotape for the jury, without audio. On cross-examination, Officer

Vess admitted that the image on camera was "pretty much smudged" because the camera had been

situated behind a window screen approximately 30 yards away from Clark. (Joint Appendix, at

228). However, Officer Vess averred that he had personally observed, with the assistance of

binoculars, the precise events depicted on the tape, and thus had no doubt that the person appearing

on the video was Clark.

Immediately following Officer Vess' testimony, the court gave another limiting instruction

to the jury:

> Members of the jury, once again, you have heard some testimony that the defendant committed an act or acts other than the one charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he is on trial for now. Instead, you can only consider it in deciding whether the defendant possessed the requisite specific intent to distribute the cocaine base that is charged in this indictment. Do not consider it for any other purpose. Remember

4

that the defendant is on trial here only for the charges contained in this indictment, not the other acts.

(Joint Appendix, at 225-26).

Upon the conclusion of the first day of trial, the court revisited defense counsel's objection to the racial composition of the jury pool. The court noted that the issue should have been addressed prior to voir dire, pursuant to 28 U.S.C. § 1867; thus, defense counsel's objection was untimely. Nonetheless, the court called Helen Spears, the jury administrator for the Eastern District of Tennessee at Knoxville, to the stand to explain the juror selection process in her district. Spears explained that prospective jurors are first selected at random from the voter registration lists in fourteen surrounding counties according to percentages of population for each county. Questionnaires are then sent to those persons and, upon return, reviewed for disqualifying factors, such as age, non-residency in the district, or death. The qualified names are placed into a computer system which randomly selects the jury venires. Spears testified that she would have no way of knowing the race of persons selected from the voter registration lists, and that neither she, nor any other person on her staff, had systematically excluded any member of any race from the pool.

Defense counsel declined to ask any questions of Spears and offered no evidence to contradict her testimony. Accordingly, the court overruled the objection to the composition of the jury pool.

Following the second day of trial, the jury returned the following special guilty verdict against Clark:

> Interrogatory No. 1: As to the charge contained in the indictment, do you find the defendant, William Earl Clark, guilty or not guilty? The answer is guilty.
>
> Interrogatory No. 2: What do you find to be the amount of cocaine base, i.e., crack cocaine, involved in the offense? The answer is 3.58 grams.

5

(Joint Appendix, at 325).

On September 12, 2002, Clark filed a *pro se* motion to dismiss the indictment for failure to allege a drug quantity under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On October 1, 2002, the district court denied the motion to dismiss the indictment and sentenced Clark to a period of incarceration of 210 months. This timely appeal ensued.

## II. ANALYSIS

### A. Clark's Motion to Dismiss the Indictment on *Apprendi* Grounds

Clark asserts that the district court erred in denying his motion to dismiss the indictment on grounds that the indictment did not allege a quantity of crack cocaine, pursuant to *Apprendi*. Because Clark objected to the district court's drug quantity determination, we review his *Apprendi* challenge *de novo*. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003); *United States v. Samuels*, 308 F.3d 662, 671 (6th Cir. 2002).

Clark's contention that the indictment is constitutionally defective because it fails to state an essential element of the charge – the quantity of drugs attributed to him – is without merit. In *Blakely v. Washington*, 124 S.Ct. 2531 (2004), the Supreme Court relied upon its doctrine in *Apprendi* and cautioned sentencing courts not to enhance criminal sentences on the basis of factual findings not made by a jury beyond a reasonable doubt. *Blakely*, 124 S.Ct. at 2538. Clark's sentence, however, was based upon a jury's finding beyond a reasonable doubt that he was carrying 3.58 grams of crack cocaine. Accordingly, his challenge fails.

### B. Clark's Challenge to the Racial Composition of the Jury Venire

Following voir dire, Clark's counsel notified the district court that he objected to the jury's racial composition because the petit jury consisted solely of Caucasians. Clark contends that the

6

seating of an all-white jury violated his due process rights under the Sixth and Fourteenth Amendments which entitle him a jury composed of a fair cross-section of the community in which he was charged. On this basis, Clark asks that his conviction be overturned.

"Whether a defendant has been denied his right to a jury selected from a fair cross-section of the community is a mixed question of law and fact, which we review *de novo*." *United States v. Buchanan*, 213 F.3d 302, 308 (6th Cir. 2000) (quoting *United States v. Allen*, 160 F.3d 1096, 1101 (6th Cir. 1998)).

The government argues that Clark's challenge to the jury's racial composition is untimely pursuant to the Jury Selection and Service Act, 28 U.S.C. § 1867, because Clark failed to raise this issue "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." *See* 28 U.S.C. § 1867(a). The district court found that Clark's challenge was untimely, but nonetheless proceeded to address it on the merits. While we agree that Clark's challenge to the jury's composition should be timed barred, *see United States v. Ovalle*, 136 F.3d 1092, 1098 (6th Cir. 1998), the district court's ruling can be affirmed on the merits as well.

The Sixth Amendment requires that the jury venire from which a jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975). In order to establish a *prima facie* showing of a violation of the Sixth Amendment's fair cross-section requirement, a defendant must demonstrate that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process.

7

*Buchanan*, 213 F.3d at 309-10; *Allen*, 160 F.3d at 1103 (citing *Duren v. Missouri*, 439 U.S. 357 (1979)).

The district court conceded that Clark had established the first two requirements of the *prima facie* case,[1] and took testimony regarding the third element. In response to questioning from the court, jury administrator Spears testified that the pool of eligible jurors, from which the jury venire is selected, comes from the voter registration lists. The lists encompass several different counties, and the proportions from each county reflect the percentage in the overall population. Spears stressed that the system for juror selection was purely random, aside from the proportionality of population procedures mentioned above. Defense counsel asked no questions of Spears and did not introduce evidence to contradict her description of the Eastern District's jury selection system. Indeed, Clark failed to produce any evidence that the under-representation of blacks in his jury

---

[1] Although it does not alter our disposition here, we note that the district court incorrectly conceded that defendant had satisfied the second element. The court, noting that the entire jury venire consisted of Caucasians, agreed with defense counsel that the second element had been satisfied:

> [Defense counsel]: The second [element] is that [African-Americans are] under-represented in the venire. Well, obviously, they were, because - -
> The Court: That's right.
> [Defense counsel]: So we fit the second one.

(Joint Appendix, at 266).

However, this Court has rejected the argument that "because [a] particular jury panel contained no African- Americans, [defendants] have met their burden of proof" as to the second element. *Allen*, 160 F.3d at 1103. Rather, we have held that defendants "must show more than that their particular panel was unrepresentative," and suggested that defendants would need to provide evidence that members of a race were under-represented in other jury pools in that district during the relevant time period. *Id*. at 1103-04. For example, in *Duren*, the United States Supreme Court looked at "the make-up of the weekly venires over several months time in determining whether the second prong was met." *Id*. at 1103 n.5 (citing *Duren*, 439 U.S. at 362-63). Clark has not carried this burden.

venire resulted from systematic exclusion. Accordingly, he cannot establish a *prima facie* violation of his right to a jury panel composed of a fair cross-section of his peers.

## C. Admission of Evidence of Prior Acts Pursuant to Rule 404(b)

Clark's final argument is that the trial court erred in admitting evidence of Clark's other acts related to his involvement in drug sales. Rule 404(b) of the Federal Rules of Evidence provides that evidence of other acts is "not admissible to prove the character of a person in order to show action in conformity therewith . . . ." Such evidence, however, may be admissible for other purposes, including proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.*

This court has established a three-step analysis for determining the admissibility of evidence of other acts under Rule 404(b). *See United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002). The first step requires the district court to decide whether there is sufficient evidence that the other act in question actually occurred. If the answer is affirmative, the court is then required to decide whether the evidence of the other act is "probative of a material issue other than character." *Id.* (citing *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994)). Finally, if the district court determines that the evidence is probative of a material issue other than character, it is required to determine whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *Id.* Clark challenges the district court's ruling as to each step.

### 1. Standard of Review

We review the district court's factual finding that the "other acts" occurred under the clearly erroneous standard. *United States v. Spikes*, 158 F.3d 913, 929 (6th Cir. 1998). We review the district court's rulings regarding both the second and third steps of the Rule 404(b) admissibility

9

analysis to determine whether the district court abused its discretion. *See, e.g., United States v. Jenkins*, 345 F.3d 928, 936 (6th Cir. 2003); *Haywood*, 280 F.3d at 720 (citing *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (holding that "all evidentiary rulings are subject to the abuse of discretion standard of review.")).

### 2.     Sufficiency of the Evidence

Clark challenges the district court's factual determination as to the video evidence, asserting that the video tape the court admitted at trial was "out of focus" and that "facial features could not be discerned." Although it is undisputed that Clark's image on the tape appeared blurred, the court admitted the tape subject to the government's assurance that a witness would provide testimony identifying the person on tape as Clark:

> [Defense counsel] argues that it is impossible to identify the man on the tape as the defendant. [The prosecutor] assures me that the person who did the video can identify the individual on the tape involved in the transaction; that, as a matter of fact, a week later, he had the occasion to identify [the defendant] as the individual.

(Joint Appendix, at 70-71).

Officer Vess then positively identified Clark in the courtroom and testified to having created the video tape of Clark selling drugs. Officer Vess explained that, although he did not know Clark at the time he recorded the drug transactions, he learned Clark's identity almost immediately thereafter. The defense was able to cross-examine Officer Vess, and the jury had an adequate opportunity to weigh his testimony.

Clark also attacks Ramsey's testimony, asserting that she lacked credibility because, although she claimed to have witnessed Clark conducting prior drug sales, she failed to connect those sales with a "specific time, day, or month." (Appellant's Brief, at 11). As the following response to defense counsel's questioning demonstrates, this is simply inaccurate:

10

Q: When was it that you saw him [selling drugs]?

A: April, May. He went to jail June the 7th. April, May, all the time before that. He went to jail June the 7th, is when he was arrested. And it was warm outside.

(Joint Appendix, at 207). Moreover, defense counsel again received ample opportunity to cross-examine Ramsey, and the jury had an adequate chance to weigh her testimony. On this basis, we cannot conclude that the district court committed clear error in determining that these prior acts had taken place.

### 3.     Probative Value for a Purpose Other than Character

"Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Haywood*, 280 F.3d at 720 (citing *Johnson*, 27 F.3d at 1190-91). Here, the government asserts that it introduced evidence of Clark's past drug sales as proof of Clark's intent to distribute the crack cocaine found in his possession on April 10, 2001. Because Rule 404(b) explicitly includes "intent" in its list of proper purposes for which other acts evidence may be admitted, we find that the evidence was offered for an admissible purpose. *Id*. at 720-21.

Furthermore, we find that Clark's intent was material or "in issue" during his trial. This court has held that "[w]here there is thrust upon the government . . . the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)." *Johnson,* 27 F.3d at 1192. The government charged Clark with possession of crack cocaine with the intent to distribute, a specific intent crime. *See Spikes*, 158 F.3d at 930 ("Moreover, this court has held that Rule 404(b) evidence is admissible to prove intent

11

if specific intent is a statutory element of the offense . . . . Possession with the intent to distribute is such an offense.") (citations omitted). Thus, Clark's intent was "in issue" during his trial.

Our final inquiry at this stage in our analysis is to determine whether the evidence of Clark's prior crack cocaine sales was probative of his intent to distribute crack cocaine on April 10, 2001. To determine if evidence of other acts is probative of intent, "we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Haywood*, 280 F.3d at 721 (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)).

Clark's prior acts of selling crack cocaine bear substantial similarity to his conviction of possession of crack cocaine with the intent to distribute in this case. Cari Ramsey and Officer Vess testified that the prior transactions consisted of Clark selling rocks of crack cocaine from a pill bottle in the Lonsdale Housing Development. (Joint Appendix, at 199-201, 217-18). In the instant case, police arrested Clark in the same neighborhood and in possession of the same drug. Indeed, Clark was on a "no-trespass" list that prohibited him from entering the Lonsdale Housing Development at all (Joint Appendix, at 224-25, 289-90), but Ramsey testified that Clark continued to frequent the area and sell crack cocaine from a neighborhood porch. (Joint Appendix, at 196-99). Moreover, Ramsey further testified that the pill bottle found in Clark's possession during his arrest was identical to those from which Clark had previously sold rocks of crack cocaine. (Joint Appendix, at 200-01). Finally, the prior sales occurred no more than 14 to 18 months before trial, a time period which the district court found, and we agree, to be reasonable. *See United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985) (admitting evidence of acts occurring between two and four years prior to the offense charged); *see also United States v. Jerkins,* 871 F.2d 598, 604 (6th Cir. 1989) (eight to ten-year old

convictions admitted), *United States v. Rubio-Gonzalez,* 674 F.2d 1067, 1075 (5th Cir.1982) (ten-

year old conviction admitted); *United States v. Foley,* 683 F.2d 273, 278 (8th Cir.), *cert. denied,* 459

U.S. 1043 (1982) (eleven-year old conviction admitted); *United States v. Engleman,* 648 F.2d 473,

479 (8th Cir.1981) (thirteen-year old conviction admitted).

### 4.     Rule 403 Balancing of Probative Value and Potential Prejudicial Effect

Having concluded that Clark's prior acts of selling crack cocaine were probative of his intent

to sell the crack cocaine found in his possession on April 10, 2001, our final task is to determine

whether the district court abused its discretion in determining that the probative value of the prior

acts was not substantially outweighed by the potential prejudicial effect. Fed. R. Evid. 403;

*Johnson*, 27 F.3d at 1190-91. The district court conducted the following analysis in admitting the

evidence of Clark's prior crack cocaine sales:

> Weighing – going through the 403 analysis, the prior sale of crack cocaine is very probative with regard to intent, it is prejudicial, but it certainly is not unfairly prejudicial. There are many cases from the circuit allowing this sort of 404(b) evidence.
>
> As to timing, we're looking at somewhere between 14 and 18 months. The circuit has allowed prior acts evidence going back 13 years in one case, eight years in another case. So the Court has no problem with the timing here.
>
> So the government does have the burden here. I believe the government has met the burden. There is always the risk of prejudice here in this sort of situation. The rules allow this kind of testimony and this kind of evidence. However, a limiting instruction will cure many of the problems.

(Joint Appendix, at 72).

The district court's opinion, while not exhaustive, addressed several factors which are

relevant to the Rule 403 balancing. For instance, the court discussed whether the prior acts were

unduly prejudicial, noting that "the prior sale of crack cocaine . . . is prejudicial, but it certainly is

13

not unfairly prejudicial." *See United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997) (affirming the admission of 404(b) evidence where the district court stated that "[t]here is nothing about any of [the prior crack cocaine sales], I take it, that [is] particularly egregious[;] they're just other sales."). The district court also considered the timing and similarity of the prior acts. *See id.* ("Yet another pertinent factor [in the Rule 403 balancing] is when the other acts occurred.") (citing *Ismail*, 756 F.2d at 1260). The district court found the prior acts to be sufficiently "close in time to the alleged crime" so as to not prejudice Clark "for something that happened in the distant past." *Id.*

Another relevant factor in the Rule 403 balancing is "the availability of other means of proof, which would reduce the need for the potentially confusing evidence." *Myers*, 123 F.3d at 364 (citing *United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996)). With regards to specific intent crimes, this Court has previously recognized that "prior acts evidence may often be the only method of proving intent." *Johnson*, 27 F.3d at 1192 (citing *United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975)). Here, the government had scant evidence of Clark's intent to sell, other than the prior drug transactions. This was not a case where police officers arrested Clark in the midst of a drug sale, or where a confidential informant provided inside information as to Clark's intent to distribute the cocaine. Indeed, no witness existed who could connect the crack cocaine found in Clark's possession to any specific sale. At trial, the government's only "other means" of proving Clark's intent to sell the crack cocaine found in his possession was the expert testimony of special agent Lewis that "the size of the rock itself, along with the quantity of the rocks, shows me this is crack cocaine that's possessed for the purpose of distribution." (Joint Appendix, at 185). Lewis' testimony, while persuasive in its limited goal of demonstrating that the drugs found in Clark's

14

possession were "packaged to sell," contributed no direct evidence that Clark had actually sold or intended to sell the cocaine found on April 10, 2001.

Finally, "[w]hether bad-act evidence unfairly prejudiced the defendant also is dependent in part on the nature of the limiting instructions given by the district court." *Myers*, 123 f.3d at 363; *Merriweather*, 78 F.3d at 1077. During Clark's trial, the district court gave limiting instructions immediately following the testimony of each witness who testified about Clark's prior drug transactions. The district court gave another limiting instruction at the close of the case:

> You have heard testimony that the defendant committed some acts other than the one charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he is on trial for now. Instead, you can only consider it in deciding whether the defendant possessed the requisite specific intent to distribute the cocaine base that is charged in the indictment. Do not consider it for any other purpose.
>
> Remember that the defendant is on trial here only for the charge contained in the indictment, not for the other acts. Do not return a guilty verdict unless the government proves the crime charged beyond a reasonable doubt.

(Joint Appendix, at 319).

Each of the three instructions was clearly phrased, correctly focused on "intent," and each directed the jury not to consider "prior acts" evidence for the purpose of determining Clark's guilt or innocence of the crime charged in the indictment. While a limiting instruction is not a "sure-fire panacea for the prejudice resulting from the needless admission of [Rule 404(b)] evidence," *Haywood*, 280 F.3d at 724, an accurate instruction will assist the jury in utilizing properly admitted Rule 404(b) evidence in a permissible manner. *See, e.g., Myers*, 123 F.3d at 364.

Clark protests that his situation is identical to *Haywood*, where we held that the admission of a defendant's prior conviction for crack cocaine possession during his trial for possession of crack cocaine with intent to distribute violated Rule 403. However, unlike the prior conviction for mere

15

possession at issue in *Haywood*, Clark's prior acts were identical to those charged at trial. As we have frequently noted, "acts related to the personal use of a controlled substance are of a wholly different order than acts involving the distribution of a controlled substance." *Jenkins*, 345 F.3d at 938 (quoting *Haywood*, 280 F.3d at 721). This court has consistently allowed the admission of Rule 404(b) evidence in drug distribution cases when the prior act consisted of a similar sale of a controlled substance rather than mere possession for personal use. *See id.* ("Although the Government cites several cases in its brief in support of its position that the district court correctly admitted the other acts evidence, those cases are distinguishable in that the pertinent other acts involved in those cases dealt with drug distribution, not personal use as is the case here."); *see also Myers*, 123 F.3d at 363 (admitting the testimony of four different witnesses concerning prior drug transactions with the defendant in order to show his intent to distribute); *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993) (admitting evidence of a prior drug transaction identical to the transaction for which the defendant was indicted in order to show his knowledge and involvement in the drug conspiracy); *Johnson*, 27 F.3d at 1191 (admitting evidence of the defendant's past drug sales in order to show his intent to distribute cocaine); *United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991) (admitting testimony that the defendant was involved in prior transportation of marijuana with the same participants and the same mode of operation as charged in the indictment). As *Haywood* did not address the admission of a prior act of drug distribution, Clark's reliance on it is inapposite.

After considering each of the relevant Rule 403 factors, we are convinced that the district court did not abuse its discretion in determining that the probative value of Clark's prior drug

transactions was not substantially outweighed by their potentially prejudicial effect. Thus, the district court properly admitted the evidence.

## III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.